**BORO HALL CORPORATION v. GENERAL MOTORS CORPORATION et al.**

District Court, S. D. New York.
March 28, 1941.

Harry J. McDermott, of Brooklyn, N. Y. (Frederick S. Martyn, of Brooklyn, N. Y., of counsel), for plaintiff.

John Thomas Smith and Albert M. Levert, both of New York City (Gordon H. Brown, of New York City, of counsel), for defendants.

CONGER, District Judge.

On motion of the defendants the complaint is dismissed.

The complaint, in two counts, claims a conspiracy on the part of all the defendants, in violation of the federal anti-trust laws, and amendments thereto, 15 U.S.C.A. § 1 et seq., to restrain the trade of plaintiffs "and others" in the used car field and in the service and supply business.

Defendant General Motors Corporation makes Chevrolet cars. Defendant General Motors Sales Corporation is a wholly-owned subsidiary of the former and has charge of distribution and sales of Chevrolet cars. Defendant Holler is general sales manager of the corporate defendants and the other individual defendants are ranking officers of the corporate defendants. These last four compose a "Dealer's Relations Board", organized by the corporate defendants to hear and dispose of controversies between the corporations and dealers. Proceedings for review may be insti-

tuted by any dealer feeling aggrieved at treatment received from the corporations, and the rulings of this Board are binding on the corporations.

From 1933 to 1940, plaintiff, then named Boro Hall Chevrolet, Inc., was an authorized dealer of defendants, operating under a so-called "Non-Exclusive Selling Franchise in the Territory Known as New York Zone." Although it is alleged that the area referred to included New York State and parts of New Jersey, it appears from the complaint that the plaintiff was allocated to a "zone of influence" which was an area in downtown Brooklyn, and it was in this area that plaintiff had established its showrooms and service stations.

Plaintiff alleges that prior to 1933 it was engaged in the used car trade and handled many types of cars other than those of defendants, and that since 1933 it continued to do so. It is further stated that plaintiff, both before and after 1933, operated a service station, selling parts and service to owners of many types of cars other than defendants', and that this service business, included, and went beyond, that required by the selling agreement involved here.

The gist of the conspiracy charged is that all of the defendants agreed to confine the plaintiff's business (as well as other dealers) to its zone of influence, that in furtherance thereof the selling agreements, which were issued annually, reserved in defendants the right to cancel same without cause, required plaintiff to sell minimum quantities of cars, but reserved to defendants the right to refuse to deliver cars without cause, and to compel plaintiff to furnish reports and permit inspections to be made. It is charged that defendants could enforce obedience to their requirements by refusing to furnish cars to dealers for resale.

It is then alleged that defendants refused to permit plaintiff to establish an outlet for its used cars, secured in trades, outside of its zone of influence, and also would not permit solicitation, by mail or otherwise, of customers for service, being outside that area. This, it is claimed, was for the purpose of favoring other dealers in contiguous zones, in whom defendants were financially interested.

Stating it differently, the real complaint seems to be that defendants, whatever may be their rights respecting the sale or service of Chevrolet cars, have no right to interfere with or dictate limits upon the trade of plaintiff in used cars of other manufacturers or in its service business as that relates to car owners in general, and that such restraint is in violation of the anti-trust laws.

The point has been raised and argued that, in considering this motion, the court is limited to the complaint and may not consider the affidavits and exhibits that have been submitted. I am aware that a controversy has existed as to this from the very inception of Rule 12(b), Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c. Because it is not necessary to the determination here I shall not pass upon the question, but shall limit myself to the complaint. I will consider, however, the "selling franchise" or "agreement", which is attached to defendants' papers because, except for a disagreement as to whether it is one or the other of the above, its terms are apparently not in dispute, and because it is revealing as to the true relationship that existed between the parties.

Whatever else may be said for this complaint, it is fatally defective in two particulars: the allegations do not demonstrate any restraint on interstate commerce, and it fails to set forth such restraint as would, in any event, constitute a violation of the anti-trust laws.

On the contrary, it is clear that the so-called coercive methods employed by the defendants are all part of the agreement executed by the parties. In effect, therefore, the agreement itself is challenged.

First, I think it plain that plaintiff, during the period from 1933 to 1940, bore a special relation to the defendants as their "dealer", operating under a selling agreement with them and using their trade-marks and good will. This was part of the arrangement. There appears to be no dispute as to defendants' right to regulate plaintiff's new car business, or its use of defendants' trade-marks, as is manifest from the fact that plaintiff, upon relinquishing its contract, immediately ceased to trade under the name "Chevrolet" and changed its corporate name.

An effort has been made by plaintiff to show that its business in cars of other makes, and in service, established prior to 1933, was unlawfully hampered by these restrictions. But whatever was the

condition of plaintiff's business before that time, it was not created under the good will of defendants. There is no doubt that defendants have a right to sell and deal with whom they please, and have a right to impose such restrictions as they deem fit in connection with the use of their name and works. Lincoln Motor Co. v. Lincoln Automobile Co., D.C., 44 F.2d 812.

Plaintiff argues that its used car and service business is independent of its new car business and not subject to defendants' control. But there appears to be no question that plaintiff held itself out as a Chevrolet dealer, not only as to its new, but as to its used car trade. Furthermore, it seems clear that the used cars for which it sought an outlet were secured as trade-ins on the sale of Chevrolet cars. And it was a condition of the selling agreement that plaintiff would maintain a service and render certain specified services to Chevrolet owners. While it does not necessarily follow that the used car and service business was "ancillary" or "incidental" to the new car trade, it is apparent that in part that was the fact, and that in any event plaintiff operated under the name of defendants as to all of its business. It is my conclusion that plaintiffs used car and service business was integrally associated with the new car trade, so that the creation by it of a used car outlet outside of its zone of influence or the solicitation of business in other areas might very well conflict with the business of other dealers of Chevrolets and thus adversely affect the business of defendants. I can find nothing unreasonable in the effort of the defendants to prevent this plaintiff from trading upon defendants' name in areas in which the name had been delegated to others.

The complaint is barren of any allegation that interstate trade is affected. In order to predicate a suit on the anti-trust laws interstate commerce must be directly and materially involved. Bigelow v. Calumet & Hecla Mining Co., 6 Cir., 167 F. 721; Anderson v. United States, 171 U.S. 604, 19 S.Ct. 50, 43 L.Ed. 300.

It must be borne in mind that here plaintiff does not complain of restrictions on its new car business, but confines its charges to used cars and service. We must assume, from the absence of anything contrary in the complaint, that the used cars for which plaintiff seeks a resale outlet were secured in intrastate trade, and nothing appears to indicate either that plaintiff did in the past, or contemplates in the future, to sell them in interstate commerce. As to the service business, paragraph 38 of the complaint reveals that to comprise the repair and painting of automobiles, lubrication and greasing, and the sale of gas, oil and grease, and such supplies as are usually sold by a service station, no effort has been made to show this trade is interstate and it is clear that it is not.

It is my conclusion that plaintiff's business, insofar as the charges made in this complaint refer to it, is intrastate and this is not within the purview of the Sherman and Clayton Acts.

As was stated in C. S. Smith Metropolitan Market Co. v. Food and Grocery Bureau of So. Calif., D. C., 33 F.Supp. 539, 540: "As the plaintiff's bill of complaint has set forth fully the practices of the parties, we have the right to assume that no other facts exist which would change the activities attributed to the defendants, so as to give them interstate scope."

The motion of defendants to dismiss the complaint is granted, without leave to amend.

In view of my holding above, it is not necessary for me to pass on the alternative motion for a more definite statement and bill of particulars.

The motion to take depositions is denied, inasmuch as I have granted defendants' motion to dismiss the complaint.