## BORO HALL CORPORATION v. GENERAL MOTORS CORPORATION et al.

### Civil Action No. 5592.

District Court, E. D. New York.

Nov. 1, 1946.

Harry J. McDermott, of Brooklyn, N.Y. (Frederick S. Martyn, of Brooklyn, N.Y., of counsel), for plaintiff.

John Thomas Smith, of New York City (Edward B. Wallace and Gordon Brown, both of New York City, of counsel), for defendants.

BYERS, District Judge.

Defendants' motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, on the ground that there is no genuine issue as to any material fact, and that the defendants are entitled to judgment as a matter of law.

The amended complaint asserts two causes of action:

(1) Breach of contract.

(2) As stated in the plaintiff's brief, a claim for relief which "is essentially equitable in nature and based upon estoppel. * * * whether or not the defendants had a right to reduce the plaintiff's zone of influence after the plaintiff had purchased and altered a building in reliance upon a statement of the defendants that they would not change the plaintiff's zone of influence."

That which is described as a zone of influence is a territory embraced within the Borough of Brooklyn in which the plaintiff, as a dealer in Chevrolet cars, had the right to solicit sales and make deliveries, and also the right to make delivery to customers who sought to do business with the plaintiff, whether or not they resided within the said zone.

Upon this motion, the defendants present:

(a) Affidavit verified September 11, 1946, of Beardslee, Secretary of General Motors Corporation, hereinafter called "General Motors", and former Assistant Secretary of General Motors Sales Corporation, hereinafter called "Sales Corporation", from October 23, 1936, until January 2, 1942, when that corporation was dissolved.

(b) Amended complaint, answers of both defendants, and the entire file in this cause.

(c) Depositions of the plaintiff's president, taken at the instance of defendants, during the months of January, February, and March of 1946.

(d) Printed records in a case in the Southern District Court in a prior action brought by the plaintiff against these defendants and others, reported in 37 F.Supp. 999, 2 Cir., 124 F.2d 822; certiorari denied 317 U.S. 695, 63 S.Ct. 436, 87 L.Ed. 556.

(e) Answering affidavit of plaintiff, verified September 24, 1946, and supplemental answering affidavit of plaintiff, verified September 28, 1946.

(f) All exhibits tendered on this motion.

It appears from the exhibits attached to the amended complaint that on January 3, 1939, the plaintiff and the Sales Corporation entered into a selling agreement similar to that of all dealers, which recites that the plaintiff is the duly constituted agency for Chevrolet motor vehicles, etc., and grants to the plaintiff as dealer the franchise to sell Chevrolet motor vehicles in the following specified territory "(but not elsewhere) namely: Non-exclusive selling franchise in the territory known as New York Zone".

The remaining terms and conditions, which were attached to the selling agreement, do not require discussion in this connection, since the controversy has to do with the alteration of the dealer's zone of influence while the said selling agreement remained in effect.

That alteration took place on or about August 1, 1939, and is relied upon by the plaintiff as establishing the breach of contract which constitutes its first asserted cause of action.

According to the terms and conditions of the contract, it was subject to termination and cancellation by the plaintiff pursuant to one month's written notice of intention to that effect, and such notice was given on July 10, 1940, effective September 1, 1940.

It is not clearly shown whether a new contract was made in January of 1940, which was cancelled as above, or that the 1939 agreement was carried into and through 1940 until September 1st.

No copy of a 1940 contract was submitted by either party, but it should be noted that the original complaint was filed June 27, 1945.

■ The question for decision as to the first cause is whether a breach of the 1939 contract has been established, giving full weight and value to the testimony of the plaintiff as augmented by the said exhibits.

It appears from the evidence, and is undisputed, that there was no written agreement between the parties to the effect that the plaintiff's zone of influence would not be altered by the defendants during the life of the contract, and apparently the plaintiff relies upon a custom said to have grown up during the years, to the effect that such alterations would be made only in January of each year when new contracts were being written, and from this it is to be supposed that the plaintiff believed that, since no such alteration was effected in the month of January, 1939, its zone of influence as then recognized would remain intact at least until the month of January, 1940.

It appears from the said testimony that the zone of influence assigned to it by the defendants was indicated on what is called a zone map of Brooklyn constituting Exhibit C attached to the amended complaint, the map being published by R. L. Polk & Co. That document reveals that subdivisions thereon indicated, bearing the numerals 4, 5A, 8 and 9A, constituted the territory allocated to the plaintiff by the Sales Corporation as at January 3, 1939. That territory was reduced by the withdrawal therefrom of part of the subdivision 8 and all of the subdivision 9A about August 1, 1939, as has been stated.

It would be easier to perceive the substance of the plaintiff's cause of action as alleged, if the boundaries of its zone of influence had been the subject of written agreement between the parties, but paragraph 9 of the amended complaint and the testimony of the plaintiff's president of January 28th, at pages 44 and 45, make it quite clear that reliance is placed solely upon oral communications, so far as that subject is involved.

The legal difficulty which confronts the plaintiff in that connection is that one of the provisions of the said contract between the parties, as stated in paragraph (2) of the Terms and Conditions, is:

"It is declared by both parties that there are no oral or other agreements or understandings between them affecting this Agreement or related to the sale or servicing of new Chevrolet motor vehicles, chassis, parts, or accessories. This Agreement supersedes and cancels all previous agreements between the parties hereto."

Unless the foregoing is to be disregarded, it necessarily means that on August 1, 1939, while the written contract was still in effect, there was no oral agreement or understanding between the plaintiff and either of the defendants concerning the limits of the plaintiff's zone of influence, or the right of the Sales Corporation to alter or modify them according to the exigencies of business developments. Perhaps the discussion of this branch of the motion should terminate at this point.

The effort has been made, however, to visualize this controversy from the standpoint of the plaintiff, and to weigh its contentions in as favorable a light as the circumstances warrant, upon the theory that every doubt should be resolved in its favor on such a motion.

The plaintiff asserts that back in 1936 it purchased certain property consisting of a business building at No. 43 Debevoise Place, Brooklyn, to which it removed from No. 241 Fulton Street, by reason of circumstances not important to this discussion.

The plaintiff had been a dealer in Chevrolet cars since 1933, and the agreement under which it was operating during 1935 constitutes Exhibit 3 on this motion submitted by the defendants, and was made by the plaintiff with Chevrolet Motor Company, the predecessor of the Sales Corporation, and that document contained in paragraph (5) a clause such as the one heretofore quoted touching the absence of oral or other agreements or understandings between the parties. The territory referred to is described as "New York Zone".

The agreement covering the year 1936 seems to be substantially identical in form, and constitutes defendants' Exhibit 2.

The testimony for the plaintiff is that, when it became necessary to change the plaintiff's place of business, in December of 1935, its president had a conversation with a Mr. Kohl and a Mr. Letts, whose capacity to act for the said predecessor will be assumed for present purposes, in which the zone of influence as indicated on Exhibit 3, annexed to the amended complaint, was discussed as being that which had been decided upon by the dealer planning committee as that pertaining to a downtown Chevrolet dealer. The testimony is:

"I then asked Mr. Kohl, 'Will this expanded Zone of Influence be cut in the future by someone' and he replied, 'No one can cut this Zone of Influence as long as there is a downtown dealer, whether it be Boro Hall Chevrolet or any other dealer, because the dealer planning committee had designated this new Zone of Influence.'"

Thereafter, in December of 1935 or January of 1936, those two named gentlemen visited the plaintiff's president and with him inspected the said property on Debevoise Place, and it was explained for the plaintiff to them that the property could not be rented but would have to be purchased, and the asking price was $125,000. The testimony continues:

"I then put a direct question to Mr. Kohl and Mr. Letts, and said 'The purchase of this building will require a lot of money, and the alterations will be tremendous, and what I wanted to know was what assurances would I have that this expanded Zone of Influence would not be reduced sometime in the future. Mr. Kohl replied, 'Don't worry, it will not be reduced as long as there is a downtown dealer, because the dealer planning committee had designated the new Zone of Influence.'"

The plaintiff bought the property, made appropriate alterations and improvements, and established its business there in the early part of 1936; in January of 1937, it entered into a contract with the Chevrolet Motor Division of the Sales Corporation, in paragraph (5) of which appears the

clause above referred to concerning the non-existence of oral or other agreements or understandings. This is defendants' Exhibit 1; the territory defined in that contract is again "the territory known as New York Zone".

On January 3, 1938, another contract with the same Division of the Sales Corporation was entered into, in which the territory is similarly referred to, and which contract also contains the clause above quoted respecting oral or other agreements. That contract is attached to the amended complaint, and as part of it is the Zone map referred to above.

It will be seen that, in January of 1937, 1938, and 1939, the plaintiff entered into three successive contracts with the predecessor of the Sales Corporation, in none of which is there any stipulation as to the permanent boundaries of the zone of influence, and in all of which there is an expressed disclaimer of any outstanding verbal or other understanding between the parties concerning the subject-matter of the agreement.

It would seem, therefore, that so far as the contractual relations of the parties were concerned during those years, there was nothing more binding upon the defendants or either of them than a forecast attributed to Messrs. Kohl and Letts, touching a matter of grave consequence alike to the dealer, who was about to promote distribution of the defendants' products in an important territory, and to the manufacturer, who maintained no relations with the consuming public save through the dealer.

It nowhere appears in the testimony that the plaintiff was advised by a lawyer in connection with the purchase of the property, but it is difficult to avoid the conclusion that such indeed was the case, for apparently a transaction involving many thousands of dollars was being conducted, and it is difficult to understand why, if the property was indeed acquired upon the representation that the so-called zone of influence would never be altered, that understanding was not at least embodied in written correspondence between the parties.

If there were no other light to be thrown upon the subject, an impartial observer would be bound to view the situation, as it existed in 1936, as necessarily experimental, so far as the geographical scope of the plaintiff's operations was concerned; and further to ascribe to the parties an understanding that a measure of flexibility must attach to the boundaries of the zone of influence, depending upon possible changes in neighborhood conditions, general business conditions, and the play of competition. The correspondence attached to the moving affidavit, comprehended in Exhibits 5 to 10, inclusive, is consistent with such an imputation.

A reading of these letters indicates that as early as August 17, 1939, the plaintiff wrote to the Chevrolet Motor Division with respect to the re-zoning and territorial limits imposed upon the plaintiff by action of either or both of the defendants, and its objection is not to the fact that a new dealer has been established adjacent to the plaintiff's territory, which is acquiesced in, but to the location of that new dealer's salesroom so close to the reduced territory assigned to the plaintiff as to threaten its business; in other words, it is the location of the new dealer's salesroom, rather than the reduction of the zone of influence, against which the plaintiff protests. On October 6, 1939, a similar communication contains the following:

"I understand and keenly appreciate that when in the judgment of the Chevrolet Motor Company a territory needs strengthening it is entirely within said company's rights to take such means as may be deemed necessary to eliminate such weakness. Thus the placing of another dealer in territory adjacent to mine caused me no great concern other than a resolution on my part to increase the volume of my own operation * * *.

"I had been very emphatically assured that the location of this dealer's showroom would be somewhere on Fourth Ave. in the vicinity of 20th St., which location would have properly placed the new car showroom of said dealer near to the center point of territory. * * *

"Therefore, I feel that I am clearly within my rights when I protest concerning

the location of this new dealer's new car showroom, for it is within 100 feet of the Sterling Place dividing line of my revised territory. * * *

"* * * I believe it unfair to place another dealer's new car showroom nine-tenths of a mile from my place of business on the same street, namely Flatbush Ave. * * *"

The letter of November 25, 1939, refers to the fact that a hearing has been requested before the Dealer Relations Board, on the part of the plaintiff, and contains a detailed recital of what are believed to be pertinent facts, and on page 5, the following occurs:

"From the foregoing statement and the correspondence it will be apparent to you that we are willing to accept a reduction of our territory but we feel that it is unfair to permit the new dealer to remain in his present location."

Under date of May 9, 1940, the conclusion of the Dealer Relations Board is embodied in a communication to the plaintiff, signed by the Chairman; that letter refers to the fact that competitive conditions have resulted in an unsatisfactory distribution of Chevrolet cars in the Borough of Brooklyn, and that the then existing territorial arrangements had to be revised, and three additional dealers were selected. The letter contains the following:

"As I understand it, you do not disagree with the decision that something had to be done, nor with the fact that additional dealers have been added. You do disagree, however, with the location of one of the added dealers, because that dealer (a) is on the edge of his territory, whereas you feel he should be more centrally placed, and (b) too close to your existing showroom and service station. Likewise, you feel that you should have greater flexibility in the location of used car lots outside your so-called sphere of influence."

These excerpts from the correspondence are consistent only with an understanding on the part of the plaintiff that the so-called zone or sphere of influence was never thought of as an inflexible and permanent boundary of the territory in which its solicitation of new sales was authorized, but that of necessity it could be changed for good reason and with deliberation, so long as the requirements of sound business relationships and fair dealing were mutually observed.

The foregoing means that this court is not at liberty to read into the 1939 contract a provision which could be phrased substantially as follows:

"The specific territory within said New York zone which is comprehended herein is shown upon a map or diagram annexed hereto and which is agreed to be the 'zone of influence' allotted to the dealer, and which may not be diminished in extent during the term of this contract without the dealer's consent."

for the reason that the plaintiff's testimony will not support a finding that such indeed was the contract of the parties; and since the letters to which reference has been made are to the contrary effect, it results that, as to the first cause of action, the defendants' motion must be granted.

The second cause of action is said to be equitable in nature and to be based upon the theory of estoppel; in other words, the plaintiff asserts, if its position is understood, that the defendants were estopped to reduce the zone of influence during the year 1939, because the plaintiff had purchased the building which has been referred to three years before that time, in reliance upon the assertion by qualified representatives of the Sales Corporation or its predecessor, that no such alteration or diminution would take place, because the dealer planning committee in 1935 or 1936 had established the boundaries thereof.

It is to be observed that the plaintiff does not allege that it would not have purchased the property at 43 Debevoise Place in the absence of such a statement; it does allege that the purchase was made in reliance "upon the promises of the defendants that said zone of influence would be given to it and that said zone of influence would not be changed".

From what has been said in connection with the first cause of action, it must be apparent that the plaintiff's version of the conversations and verbal statements attributed to Messrs. Kohl and Letts

falls far short of spelling out a state of facts which would support an estoppel against the defendants, sufficient to disqualify either of them from altering the zone of influence in accordance with the requirements of fair dealing between the parties and the effective distribution of Chevrolet cars and parts; that which has been quoted from the plaintiff's own letters establishes that such was not the understanding of the plaintiff's president.

The latter's position is not strengthened by the assertions contained in the supplemental answering affidavit, to the effect that a custom was in existence as early as 1933 and continued thereafter, to the effect that a zone of influence, once assigned to a dealer, "would remain unchanged unless discussed some time in January when new contracts were signed each year and that this was the custom and policy of Chevrolet with respect to changes in a dealer's zone of influence". In the first place, no custom is pleaded in the amended complaint of this or any other nature, and it is elementary that any custom must be pleaded before evidence concerning it can be received. Moreover, the existence of such an alleged custom would necessarily be incompatible with the written provisions of the contract which have been quoted, concerning verbal or other understandings not embodied within the instrument.

Again, no such custom was asserted in any of the letters written by the plaintiff to the defendants in the years 1939 and 1940, which is the equivalent of saying that such an alleged custom is an afterthought of recent inspiration, which finds no support in the testimony of the plaintiff's president, given under deposition, or otherwise in the record.

Finally, if a contract was entered into in January of 1940, containing the same terms and conditions as are set forth in the five which constitute Exhibits on this motion, five months after the zone of influence had been reduced by defendants, it is difficult to reconcile its being entered into, with an alleged breach of the alleged custom on or about August 1, 1939.

The defendants' reply memorandum asserts that such a contract was indeed made, and a copy of that memorandum was served on plaintiff's attorney on October 9, 1946, but nothing to refute that statement has since been filed.

For these reasons then, the plaintiff's position is equally infirm as to the second cause of action, and the defendants' motion must be granted.

In reaching this conclusion, the earlier litigation between the parties has been consulted, but is not believed to be dispositive of this cause.

Settle order.