POSTER EXCHANGE, INC.
v.
NATIONAL SCREEN SERVICE
CORPORATION.

Civ. A. No. 7665.

United States District Court
N. D. Georgia,
Atlanta Division.

Oct. 19, 1961.

Jones, Bird & Howell, Atlanta, Ga., Henican, James & Cleveland, New Orleans, La., for plaintiff.

Gambrell, Harlan, Russell, Moye & Richardson, Atlanta, Ga., Phillips, Nizer, Benjamin, Krim & Ballon, New York City, for defendant.

MORGAN, District Judge.

This cause coming on to be heard on the motion of plaintiff for a preliminary injunction, and on the motion of defendant for a summary judgment, due notice of the respective motions having been given by each movant to opposing counsel, and the Court having considered the pleadings, the evidence adduced, objections to evidence, the arguments of counsel, the proposed findings of fact and conclusions of law submitted by each party, and the Court being fully advised in the premises, it finds as follows:

### Findings of Fact

1. The plaintiff herein is a corporation organized and existing under the laws of the State of Georgia with its offices and principal place of doing business in the City of Atlanta, Fulton County, Georgia. The plaintiff corporation has, since its incorporation in 1941, been engaged in the business of renting and selling standard motion picture accessories as hereinafter defined to various and sundry motion picture exhibitors in the Atlanta area and in interstate commerce throughout the states of Alabama, Georgia, Florida, and Tennessee.

2. National Screen Service Corporation (hereinafter called "National Screen") is a Delaware corporation transacting and doing business within the State of Georgia and within the Northern District of Georiga. National Screen has branches located throughout the United States and supplies standard motion picture accessories as hereinafter defined in interstate commerce to motion picture exhibitors in all states in the United States.

3. The term "motion picture advertising accessories" is used in the motion picture industry to describe posters, signs,

displays and similar material placed in and around the lobbies of motion picture theatres or on billboards outside the theatre to advertise the current or coming motion picture attractions in the particular theatre.

Certain types of motion picture advertising accessories traditionally have been known in the film industry as "standard accessories". The standard accessories involved in this case are:

    (a) 8 x 10 inch "stills" (black and white photographs);

    (b) 11 x 14 inch lobby displays;

    (c) 22 x 28 inch lobby displays;

    (d) 14 x 36 inch insert cards;

    (e) one sheet;

    (f) three sheets;

    (g) six sheets;

    (h) twenty-four sheets.

4. At all times material hereto National Screen was engaged among other things in the business of creating, manufacturing and distributing standard motion picture accessories with regard to motion picture films distributed by or through the major American distributors of motion picture films, including such distributors as Paramount Film Distributing Corporation, Twentieth Century Fox Distributing Corporation, United Artists Corporation, Universal Film Exchanges, Inc., Warner Bros. Pictures Distributing Corporation, Loew's, Inc., and Columbia Pictures Corporation. Columbia Pictures Corporation now manufactures and distributes its own standard accessories on pictures distributed by or through it, but standard accessories on Columbia Pictures were formerly created, manufactured and distributed through National Screen.

5. Standard accessories have been in use for many years. Historically the general practice in the industry was that the motion picture companies would design and manufacture the various types of standard accessories and distribute them through the company's branch offices or exchanges. Thus, at the commencement of its business in 1941, mo-

tion picture accessories were available to The Poster Exchange, Inc., through the Atlanta exchanges of major motion picture distributors and The Poster Exchange, Inc., dealt directly with the major producers of motion pictures, obtaining the posters and other accessories necessary for its business directly from them.

6. By at least as early as 1947 all the above named major distributors of motion picture films ceased manufacturing or distributing motion picture accessories on films distributed by or through them and each of said distributors separately contracted with National Screen whereby National Screen was given exclusive rights upon a nation-wide basis to manufacture and distribute standard motion picture accessories with regard to motion picture films distributed by or through said major distributors.

7. Because of the exclusive contracts entered into by each of the motion picture distributors with National Screen with the result that motion picture accessories were no longer available through the branch offices or exchanges of the film companies, the plaintiff by at least as early as 1947 was forced to, and did, obtain its requirements of standard motion picture accessories from National Screen.

8. Plaintiff's exhibitor customers exhibit numerous films distributed by or through the major distributors and in connection with the exhibition of such films plaintiff's exhibitor customers require standard accessories manufactured and created for use in connection with the film being shown. No poster renter such as plaintiff can remain in business or meet the requirements of its exhibitor customers without ability to obtain standard motion picture accessories with regard to films distributed by or through the major distributors of motion picture films.

9. Since at least as early as 1947 and continuing thereafter up through the filing of the complaint in this case, i. e., July 17, 1961, standard motion picture accessories on films distributed by all major distributors except Columbia have

been available only through National Screen. All standard accessories distributed in the local market with regard to films distributed by or through the major distributors are manufactured and distributed by National Screen. Prior to March 16, 1961, some such standard accessories were distributed by National Screen direct to exhibitors and some to the plaintiff, who in turn competed with National Screen in the distribution of such accessories to motion picture exhibitors.

10. National Screen is and has been for many years the only concern in the continental United States with national distribution facilities for distributing standard motion picture accessories and the only concern which is now in fact receiving licenses from the major distributors of motion pictures to manufacture and distribute standard motion picture accessories with regard to films distributed by or through each of said major distributors. It is clear that National Screen has monopoly power and control both nationally and within the market area over the manufacturing and distribution of standard motion picture accessories with regard to films of the major distributors.

11. Plaintiff prior to May 16, 1961, purchased standard motion picture accessories manufactured by National Screen, and National Screen sold to plaintiff substantial quantities of said accessories.

12. Plaintiff competes with National Screen in the distribution of standard motion picture accessories to exhibitors in the market area and is the sole competitor of National Screen in the market area comprised of cities throughout the states of Alabama, Georgia, Florida, and Tennessee. While National Screen controls the distribution of most standard motion picture accessories in the market area, plaintiff has been successful in building up a substantial poster renter business at the expense of the 100 per cent control which would otherwise be enjoyed by National Screen.

13. Under a consent decree "in the case of United States v. National Screen Service Corporation, et al., a case in which the plaintiff was not a party" National Screen consented to a decree which among other provisions contained the following:

"V

" * * * (B) No producer Defendant shall be required to regard any person as a qualified applicant within the meaning of Subsection (A) of this section unless:

"(1) The applicant can meet and will agree to meet reasonable business standards as to reliability, financial responsibility, ability, production facilities and a national distribution organization and facilities to service, with respect to all feature motion pictures released by the Producer Defendant, all exhibitors desiring such service. Provided, however, that the size of the organization and facilities of National Screen shall not be used as the standards for determining the adequacy of the applicant's qualifications."

14. National Screen's licenses from the major distributors have been nonexclusive since at least as early as 1957 and any qualified applicant as defined by said consent decree has been free to negotiate with the major distributors relative to obtaining nonexclusive licenses to manufacture standard motion picture accessories. However, the distributors of motion picture films have traditionally insisted that licensees to manufacture its accessories have national distribution facilities, and since National Screen is the only concern meeting such requirement, National Screen is the only concern in fact licensed to manufacture and distribute standard accessories on films distributed by or through the major motion picture distributors.

15. Plaintiff herein does not have nor has it ever had facilities or resources to manufacture or national distribution facilities with which to distribute standard motion picture accessories. Plaintiff

has never been engaged in the business of manufacturing accessories.

16. National Screen sold standard motion picture accessories manufactured by it to plaintiff for many years. However, on or about February 15, 1961, The Poster Exchange, Inc., was notified in writing by National Screen that from and after May 16, 1961, no further standard accessories manufactured by National Screen would be available to it for distribution in the market area or elsewhere.

17. From and after May 16, 1961, National Screen has in fact refused to sell standard motion picture accessories to the plaintiff in spite of numerous requests by plaintiff that National Screen make available to it motion picture accessories ordered by it just as was done prior to the refusal to deal made effective on May 16, 1961.

18. Since May 16, 1961, The Poster Exchange, Inc., has obtained no standard motion picture accessories from the branch office of National Screen in Atlanta, Georgia, nor directly from any other branch of National Screen. As a result of said refusal to sell by National Screen, the sole manufacturer and source of supply for standard motion picture accessories, plaintiff's business has been affected as follows:

(a) Sales and rentals of standard motion picture accessories to its exhibitor customers have declined from $400.00 to $500.00 per week since the refusal to deal by National Screen;

(b) No new business can be or is being solicited by The Poster Exchange, Inc., due to inability to obtain standard motion picture accessories from National Screen with resulting inability to meet the demands of exhibitor customers;

(c) The Poster Exchange, Inc., is unable to supply its regular exhibitor customers or any other exhibitor customers with their requirements of standard motion picture accessories. As a result, many of plaintiff's former customers are now dealing direct with National Screen as the only source of supply now available to them to meet their accessory needs. Continued inability of the plaintiff to obtain such accessories will likely mean that such customers are permanently lost.

19. National Screen's refusal to sell standard motion picture accessories to the plaintiff will result and is resulting in the elimination of the plaintiff as a competitor with National Screen in the distribution of standard motion picture accessories.

20. The elimination of the plaintiff as a competitor of National Screen will give to National Screen complete control in the market area over the distribution of all standard motion picture accessories with regard to films distributed by or through the major distributors of motion pictures and all theatre owners in the market area exhibiting pictures distributed by or through the major distributors, except Columbia, will have to buy their requirement of such standard motion picture accessories from National Screen at such prices and on such terms and conditions as National Screen may establish.

21. National Screen controls the distribution of all motion picture accessories of said major distributors in the market area. National Screen has at least since 1947 sold said accessories to The Poster Exchange, Inc., determining at all times the quantity of said accessories available to The Poster Exchange, Inc., and the prices to be charged therefor. The Poster Exchange, Inc., has always paid National Screen top prices for standard motion picture accessories which it purchased and has offered to continue to do so. It does not appear that plaintiff's business has been unprofitable to National Screen.

Conclusions of Law

1. This Court has jurisdiction of the parties.

2. This Court has jurisdiction of the subject matter.

3. The plaintiff and the defendant are engaged in interstate commerce and the

acts and practices of the defendant have had and are having a direct and substantial effect upon said commerce.

4. The plaintiff has presented evidence from which a jury could conclude that the plaintiff is a person injured in its business or property within the meaning of Section 4 of the Clayton Act, 15 U.S.C.A. § 15, by reason of the acts or conduct of the defendant in refusing to sell its accessories to plaintiff. Banana Distributors v. United Fruit Co. et al., D.C., 162 F.Supp. 32.

5. The plaintiff has presented evidence which would authorize a jury to conclude that National Screen is utilizing its monopoly power and control as sole manufacturer and distributor of all standard motion picture accessories with regard to motion picture films distributed by or through the major distributors of motion picture films to exclude a competitor and foreclose competition nationally and in the market area in the distribution of standard motion picture accessories.

6. The plaintiff has presented evidence which would authorize a jury to conclude that National Screen's intent and purpose in refusing to deal with the plaintiff was to eliminate the plaintiff as a competitor and/or foreclose competition in the distribution of standard motion picture accessories of the major film companies in the market area.

7. Plaintiff has presented evidence which would authorize a jury to conclude that National Screen's refusal to deal with the plaintiff originated not from the exercise of business judgment reasonably related to the furtherance of its own business but rather stemmed from an intent and purpose to extend and maintain its monopoly over the distribution of standard motion picture accessories in the market area.

8. The plaintiff has presented evidence which would authorize a jury to conclude that the elimination of the plaintiff as a competitor of National Screen would give to National Screen 100 per cent control over the distribution in the market area of all standard accessories with regard to films distributed by or through the major distributors and that the use of a refusal to deal accompanied by monopoly power purposefully used to accomplish this result is inimicable to the public interest and therefore prohibited. United States v. Aluminum Co. of America, 2 Cir., 1945, 148 F.2d 416; United States v. Klearflax Linen Looms, D.C. Minn.1945, 63 F.Supp. 32; Lorain Journal Co. v. United States, 342 U.S. 143, 72 S.Ct. 181, 96 L.Ed. 162.

9. The Court concludes that the temporary injunction requested by plaintiff should be granted for each and every one of the following reasons:

(a) The plaintiff's losses as a result of National Screen's refusal to deal are not confined solely to loss of profits from diminished sales or rentals of accessories, though such loss constitutes a substantial portion of plaintiff's total business.

(b) Plaintiff's failure and inability to supply its exhibitor customers with standard motion picture accessories required by them will likely mean that said customers will be lost permanently.

(c) There is plainly a substantial loss of good will to a going concern which may never be adequately recompensed by damages.

(d) It does not appear that National Screen will suffer any appreciable loss or damage if it continues to deal with plaintiff as it has done for some 15 years. National Screen has not shown that its prior dealings with plaintiff were unprofitable. Further, National Screen will be protected by a bond for damages.

(e) The relief sought by plaintiff is not extraordinary but merely an opportunity to stay in business until the trial of this case.

(f) Little, if any, injury will be done to National Screen by maintaining the status quo pending adjudication of the issues involved, whereas plaintiff will be destroyed by a con-

tinued refusal to deal by National Screen.

10. The Court concludes with regard to National Screen's motion for summary judgment that the same should be and is hereby denied for the reason that there are material issues of fact in the case incapable of adjudication and disposition by the Court as a matter of law. It will be necessary at the trial of the action for the issues relevant to the refusal to deal to be tried. The defendant will then have an opportunity to establish whether it had any legitimate business reason apart from the elimination of a competitor for its refusal to deal with the plaintiff. The Court finds material issues of fact as to:

(a) The degree and extent of National Screen's control both nationally and in the market area over the distribution of standard motion picture accessories with regard to motion picture films distributed by or through the major distributors of motion picture films.

(b) Whether National Screen's refusal to deal with the plaintiff originated from the legitimate exercise of business judgment or was done with the intent and purpose of eliminating the plaintiff as a competitor, foreclosing competition in the distribution of said standard motion picture accessories in the market area and of maintaining and extending National Screen's monopoly.

(c) The extent and degree to which plaintiff has or does not have effective competitive alternatives to dealing with National Screen.

(d) The effect of National Screen's refusal to deal upon competition and upon exhibitor customers who buy standard motion picture accessories with regard to motion picture films distributed by or through the major distributors.

(e) The extent to which plaintiff has been damaged or injured in its business or property by National Screen's refusal to deal.

The plaintiff having made a motion for a preliminary injunction in this case, and having given due notice thereof to defendant, this Court, after considering the pleadings, the evidence adduced, arguments of counsel for both parties, and after making its Findings of Fact and Conclusions of Law as listed above, hereby orders that the defendant, its officers, attorneys, agents, servants, and employees, and all other persons in concert or participation with them be, and they are hereby, and until further order of this Court, restrained and enjoined from directly or indirectly refusing to deal with the plaintiff upon the same terms and conditions which prevailed prior to February 15, 1961.

It is further ordered by this Court that the plaintiff file its bond, with good and solvent surety, in the sum of $5,000, conditioned for the payment of such costs and damages as may be suffered by defendant by reason of the wrongful issuance of this preliminary injunction.

It is so ordered.