Harry VOGELSTEIN, trading as Baltimore Poster Company

v.

NATIONAL SCREEN SERVICE CORPORATION, Metro-Goldwyn-Mayer Inc. (formerly Loew's Incorporated), TCF Film Corporation (formerly Twentieth Century-Fox Film Corporation), United Artists Corporation, Warner Bros. Pictures Distributing Corporation, Paramount Film Distributing Corporation, and Universal Film Exchange, Inc.

Civ. A. No. 29526.

United States District Court
E. D. Pennsylvania.
March 30, 1962.

Francis T. Anderson, Philadelphia, Pa., for plaintiff.

Louis J. Goffman, Philadelphia, Pa., for Warner Bros. Pictures Corp.

Edward W. Mullinix, Philadelphia, Pa., for National Screen Service Corp.

W. Bradley Ward, Philadelphia, Pa., for Metro-Goldwyn-Mayer Inc., United Artist Corp., T. C. F. Film Corp., Paramount Film Distributing Corp. and Universal Film Exchange Inc.

LUONGO, District Judge.

In this antitrust action, defendants' motion to dismiss the complaint has presented the Court with the following issue:

Does a stipulation entered into by the parties on November 4, 1957 during the course of a prior suit[1] and the dismissal of that action in accordance with the terms of the stipulation compel us likewise to dismiss the instant complaint?

The details of the history of the litigation are essential to the resolution of the issue. The matter really has a pre-history. In 1942 various poster leasing dealers instituted a treble damage antitrust action against National Screen Service Corporation (hereinafter referred to as National Screen) and others. Allied Poster & Supply Corporation v. National Screen Service Corporation, Civil Action No. 2472. The complaint alleged that exclusive license agreements whereby motion picture producers authorized National Screen to manufacture and distribute motion picture advertising accessories, constituted a violation of the antitrust laws. That action was settled and dismissed with prejudice. One of the terms of the settlement agreement required National Screen to make available, by sublicense, certain material to the dealers who were plaintiffs in that action.

On December 5, 1950, while the sublicense agreements were in effect, Vogelstein, who was not a party to the Allied suit but who was permitted to purchase materials from National Screen, filed a complaint (hereinafter referred to as "Vogelstein #1") in this Court (Civil Action No. 11678) against the same defendants who are named as party defendants in the matter now before us. "Vogelstein #1" alleged that defendants " * * * had conspired to monopolize, and had actually monopolized the business of distributing motion picture advertising posters throughout the United States in violation of Sections 1 and 2 of the Sherman Antitrust Act [15 U.S.C.A. §§ 1, 2]." That suit was one of seven similar suits in which various poster dealers sued the same defendants stating their claims in substantially the same terms and basing their actions on identical theories of the case.

Like the Allied case the allegations of unlawful monopoly and conspiracy in these seven suits were predicated on the exclusive licenses to produce and distribute advertising accessories which various motion picture producers had granted to National Screen. The period for which damages were sought and the period during which the alleged unlawful monopoly and conspiracy came into existence and flourished was 1943–1949. The events alleged to have occurred during those years, as we shall demonstrate later in this opinion, are crucial in resolving the issue in the instant case.

Of the seven cases, Lawlor v. National Screen Service Corporation, D.C., 99 F. Supp. 180, Civil Action No. 10020 (hereinafter referred to as "Lawlor") had been docketed earliest[2]. At pre-trial conferences held in October and November 1957, Judge Kraft, to whom the Lawlor case had been assigned, aware of the six companion cases, " * * * sug-

---

1. Harry Vogelstein, trading as Baltimore Poster Company v. National Screen Service Corporation, Civil Action No. 11678.

2. The Lawlor case has had an extensive history in the Courts. A summary of this history is found in Lawlor v. National Screen Service Corporation, 270 F. 2d 146, 147–148 (3rd Cir. 1959).

gested that the parties endeavor to reach some agreement which would obviate the necessity to retry in any of the companion cases certain of the issues to be litigated in the Lawlor case". Lipp v. National Screen Service Corporation, 188 F.Supp. 245, 246 (D.C.E.D.Pa.1960).

On November 4, 1957, those discussions resulted in an agreement between the parties which provided in part:

"In the remaining six cases if, by final judgment in whatever shall have been the court of last resort, it is determined in Civil Action No. 10,020 that no conspiracy or unlawful monopoly existed, that finding shall be determinative of that issue in the remaining six cases. On the contrary, if such final determination therein shall be that the unlawful conspiracy or monopoly did exist, then the remaining six cases shall be consolidated for trial and tried without a jury."

During the conference at which the above agreement was recorded, attention was called to another case, Civil Action No. 22707, (hereinafter referred to as "Vogelstein #2") in which parties plaintiff to the seven suits then pending joined in one complaint containing seven counts, one for each plaintiff, alleging the same cause of action as was contained in the pending suits, but seeking damages for the period subsequent to the commencement of those original suits. "Vogelstein #2", the supplemental action, was not included in the stipulation.

Lawlor was tried in November-December 1957, and January 1958, and resulted in judgment for defendants. One hundred forty findings of fact and twelve conclusions of law were issued by the Court, including the following two conclusions of law:

"3. The defendant, National Screen, did not monopolize or attempt to monopolize within the meaning of Section 2 of the Sherman Act."

"4. No defendant herein combined or conspired with any other defendant or defendants within the meaning of Section 1 of the Sherman Act."

Judgment was affirmed on appeal, 270 F.2d 146 (3rd Cir. 1959) and plaintiffs' petition for certiorari was denied by the Supreme Court, 362 U.S. 922, 80 S.Ct. 676, 4 L.Ed.2d 742 (1960).

At this point we must reemphasize that in Lawlor, in "Vogelstein #1", and in the other five cases as well, the acts alleged to be the basis of unlawful monopoly and conspiracy occurred during the period "from August 19, 1943 to August 18, 1949, inclusive". Judge Kraft, in Lawlor, found that that conduct did not constitute an unlawful conspiracy and monopoly.

Defendants thereupon moved for summary judgment not only in the six companion cases (including "Vogelstein #1"), but in the supplemental action (including "Vogelstein #2") as well. Dissatisfied with the Lawlor decision, plaintiffs in the companion cases tested the effect of the stipulation by opposing those motions. In Lipp v. National Screen Service Corporation, supra, 188 F.Supp. at pages 247–248, Judge Kraft entered judgments in favor of defendants, and discussed the valid and binding effect of the stipulation in the following terms:

"Since the issues of liability were determined adversely to the plaintiffs in Lawlor, the clear and unequivocal terms of the pre-trial agreement require judgments for the defendants in the six companion cases, which were expressly made the subject of the agreement. Plaintiffs' contentions to the contrary are wholly devoid of merit.

"Plaintiffs assert that they have not 'had their day in court.' They urge the fact that at the Lawlor trial, on objection, we excluded certain evidence inadmissible in the Lawlor trial which might have been admissible in the trial of one of the six companion cases. Our ruling was clearly correct for the reason, as we then stated, that 'the stipula-

tion did not embrace any agreement that evidence which was admissible in one case not on trial should be admissible in the case now on trial though otherwise inadmissible therein.'

"Plaintiffs further contend that the judgment of dismissal in Lawlor 'was based, in large part, on dozens of the court's findings of fact peculiar to the plaintiffs in that case, and, therefore, totally inapplicable to any of the cases involved in these proceedings.' Even if such be the fact, it affords no sufficient reason to nullify a stipulation clear and unequivocal in its terms, free of any limitation or qualification and entered into only after the most thoughtful and prolonged consideration and discussion among counsel. The actions had then been pending for some seven years and Lawlor had already had, before trial, a noteworthy appellate history. Presumably, all of the mature, experienced and able counsel were quite aware of the existing factual circumstances in each of the cases and none would have hesitated to insist upon appropriate reservations, conditions or qualifications, to the stipulation, had a substantial difference in facts in any case so required."

The Court also entered judgment for defendants in the supplemental actions. At the time the stipulation was recorded the parties' attention was called to the fact that it did not expressly include the supplemental action. This matter was discussed and counsel for plaintiff summed up the thinking of all counsel when he said:

" * * * as a practical matter, that suit ["Vogelstein #2"] being merely supplemental to this suit, as Mr. Mullinix says, and Mr. Ward, it simply carries on, it simply brings the other case down to date. And, certainly, if, as we have assumed, for instance, that the Court finds that there is no liability here, no violation of the Sherman Act, the sec-

ond suit will certainly be dead when its parent dies." Lipp v. National Screen Service Corporation, supra, at p. 247.

That being the understanding by counsel of the scope and effect of the stipulation, the course to be followed by the Court was clear.

On appeal, the Court of Appeals affirmed the decision of the District Court, 290 F.2d 321 (3rd Cir. 1961) and at page 322 stated:

"The agreement made among counsel was no compromise of a lawsuit. It was, instead, a common sense way of handling several cases involving the same points. The judge could have ordered a consolidated trial for all of them. * * * It was considered more feasible to handle the litigation in the manner stipulated for. Defendants took their chances on judgments against them in seven cases if the Lawlor case was won. Plaintiffs took their chances on losing if the Lawlor case was lost. * * * "

We finally turn to the complaint before us, that filed in April, 1961 (hereinafter called "Vogelstein #3" or "present complaint"). The complainant, Vogelstein, is engaged in the business of supplying motion picture theatres with advertising materials, such as posters, etc. Defendant, National Screen Service Corporation, manufactures and supplies advertising paraphernalia to theatre operators throughout the United States and the remaining defendants are the principal producers and distributors of motion picture films in the United States. The complaint is so short and its wording so critical to the issue, that we have reproduced the following averments:

"1. On December 5, 1950, the plaintiff herein filed a complaint in the said court which was docketed as Civil Action No. 11,678 of 1950.

"2. In said complaint plaintiff alleged, in substance and effect, that the defendants therein, who were

the same as the above named defendants in the instant action, had conspired to monopolize, and had actually monopolized, the business of distributing motion picture advertising posters throughout the United States in violation of sections 1 and 2 of the Sherman Anti-Trust Act.

"3. On June 3, 1957, plaintiff, among others, commenced a second action in the same court, against the same defendants, alleging in substance and effect, that all defendants had continued and were still continuing, the illegal acts and practices complained of in said Civil Action No. 11,678 of 1950, and praying inter alia, for treble the damages suffered since December 5, 1950. Said second action was docketed in said court as Civil Action No. 22,707 of 1957.

"4. All of the defendants have continued and are still continuing to monopolize the business of distributing motion picture advertising posters as alleged in the complaints filed in Civil Action No. 11,678 of 1950, and No. 22,707 of 1957."

Plaintiff, in "Vogelstein #3", prays for damages from the time of the filing of "Vogelstein #2", June 31, 1957 to the date of the filing of "Vogelstein #3". On January 11, 1962, an amendment to "Vogelstein #3" was filed containing one allegation, the nature and effect of which will be considered later. Defendants have moved to dismiss "Vogelstein #3" and the amendment thereto.

■■ Courts are cautious in dealing with motions to dismiss, particularly where to grant the motion would terminate the litigation before the parties have had their day in court. We are aware that the Supreme Court in Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 473, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962) has cautioned us that " * * * summary procedures should be used sparingly in complex antitrust litigation * * *." With this in mind, we approach the motion before us even more

warily since the basis for the motion is a stipulation and the subsequent entry of summary judgment pursuant to that stipulation. Nevertheless, after consideration of all the pleadings previously referred to, the motions to dismiss will be granted.

■ The allegations in the present complaint constitute a reiteration, by incorporation by reference, of the allegations contained in "Vogelstein #1". Nothing substantively new is contained in the present complaint, which merely alleges that an unlawful monopoly and conspiracy, created during 1943–1949 continues to the present and has injured plaintiff. If the conduct complained of during 1943–1949 was not unlawful, the continuance of that conduct cannot be unlawful. The monopoly and conspiracy issues, based on events occurring during the 1943–1949 period, are common both to "Vogelstein #1" and to "Vogelstein #3", the present complaint. Consequently the resolution of those issues in "Vogelstein #1" operates as an estoppel in these subsequent proceedings against the parties bound by the original action.

The Supreme Court in Cromwell v. County of Sac., 94 U.S. 351, 353, 24 L. Ed. 195, (1876), quoting Lord Ellenborough, said:

"It is not the recovery, but the matter alleged by the party, and upon which the recovery proceeds, which creates the estoppel. The recovery of itself in an action of trespass is only a bar to the future recovery of damages for the same injury; but the estoppel precludes parties and privies from contending to the contrary of that point or matter of fact, which, having been once distinctly put in issue by them, or by those to whom they are privy in estate or law, has been, on such issue joined, solemnly found against them."

Also see United States v. International Building Co., 345 U.S. 502, 73 S.Ct. 807, 97 L.Ed. 1182 (1953).

It makes no difference, so far as the issue before us is concerned, whether or not defendants' conduct is regarded as a series of individual torts or as one continuing tort. What is important is that there was an *adjudication* on the monopoly and conspiracy issues in Lawlor. Those issues were common and crucial to each of Vogelstein's complaints. By stipulation the findings in Lawlor were made applicable to "Vogelstein #1". The combined effect of the trial of Lawlor and the stipulation, therefore, was a determination that defendants did not unlawfully conspire or monopolize and Vogelstein is bound by that determination. The stipulation was designed to avoid repetitive and protracted litigation. It sought to do so by the resolution, for all the cases, of the two crucial issues common to all, i. e., monopoly and conspiracy.

It is true that the judgment in favor of defendants in Lawlor is supported not only by the findings that there was no unlawful monopoly or conspiracy, but on other findings as well, e. g., the Court found that plaintiffs in Lawlor had failed to show any harm. Those other findings in no way lessen the effect of the findings on the monopoly and conspiracy issues. The resolution of those issues depended not upon findings based on the circumstances of any one dealer, but instead involved the nationwide development and practices of an industry. Either defendants had conspired to monopolize the poster business or they hadn't; either defendants monopolized the poster business or they didn't. The determination of those issues was not, as we regard it, dependent upon circumstances peculiar to Lawlor, Vogelstein or any other poster-dealer.

The stipulation, as we interpret it, covered not only existing claims for damages but subsequent claims as well, where those claims are based on the same alleged acts of conspiracy and monopoly as were before the Court in Lawlor and in plaintiffs' original complaint. Indeed, the parties themselves so interpret it. Mr. Anderson, counsel for plaintiffs in Lawlor and also counsel for plaintiffs in the instant case, in referring to what we have labeled "Vogelstein #2", stated that it was merely supplemental to the original complaint; the former simply brought the latter up to date. We can perceive no difference in the character of "Vogelstein #2" and the complaint now before us. The present complaint merely brings "Vogelstein #1" and Vogelstein #2" up to date. Therefore, a determination, after a full hearing on the merits of crucial issues, which, by stipulation, disposed of "Vogelstein #1", is also dispositive of the matter before us.

Plaintiff relies on Lawlor v. National Screen Service Corporation, 349 U.S. 322, 75 S.Ct. 865, 99 L.Ed. 1122 (1955) [3] for the proposition that neither the principles of res judicata nor of collateral estoppel operate as a bar to the present suit. However, the facts in the Lawlor case distinguish it from the matter before us. In 1943 the case of Allied Poster & Supply Corporation v. National Screen Service Corporation, Civil Action No. 2472, an antitrust action started in 1942, was settled prior to trial. Plaintiffs therein withdrew that suit which was dismissed "with prejudice". Thereafter, Lawlor, one of the plaintiffs in Allied and a party to the settlement, instituted another antitrust action against the same defendants. Defendants' plea of res judicata was rejected by the Supreme Court. No question of collateral estoppel was involved because the case had never been tried. In order for parties to be subsequently precluded from challenging issues there must first be findings on which the determination of those issues was based. In Lawlor there was no adjudication and there were no findings. Res judicata was also inapplicable since the judgment was unaccompanied by findings and the parties were not bound on any issue.

3. This reference is to one of the pretrial proceedings in the Lawlor case to which we have many times referred above.

The Supreme Court concluded that the 1943 action and the suit before it were not based on the same cause of action because:

(a) the conduct complained of occurred after the 1943 judgment;

(b) new antitrust violations were alleged;

(c) the claims sued on could not have been sued on in the prior action;

(d) in the interim alleged substantial changes in the scope of the monopoly had occurred.

Both Lawlor and the matter before us involve subsequent antitrust actions after previous complaints had been dismissed. At this point similarity ends. The most significant difference is that in the instant case there was a previous adjudication of the issues and although this was accomplished by means of a "test case" and stipulation, it in no way diminishes the fact that there were findings on the issues of conspiracy and monopoly.

At argument on the motion to dismiss the Court asked counsel for Vogelstein if he had any additional evidence over and above that presented at the Lawlor trial. His reply was, in effect, that the case *might* be tried differently, or that it *might* be tried by other counsel who *might* present the case in a different fashion. At no time did he indicate to the Court that he was in possession of additional evidence to present, only that the case might be differently tried (and tried to a jury rather than to the Court alone).

Vogelstein has not alleged that the scope of the alleged monopoly has increased since the Lawlor trial, and in fact, the contrary may be true. All of Vogelstein's complaints, including the present complaint, are founded upon the exclusive licenses given by the movie producers to National Screen. Those exclusive licenses were held not to constitute a monopoly in Lawlor. Since that time, as part of the litigation in Lipp v. National Screen Service Corporation, supra, Judge Kraft, in a Memorandum

Opinion filed May 31, 1961, 205 F.Supp. 180, found that National Screen has been operating under non-exclusive licenses from the major motion picture producers since 1952. In addition, a consent decree was entered into in the Southern District of New York on March 29, 1957 by which the major motion picture producers agreed to grant only non-exclusive licenses to producers and distributors of advertising accessories. 1957 Trade Cases ¶ 68,670. That circumstance can only serve to weaken Vogelstein's claim.

Plaintiff suggests that the Court, in Lawlor, did not find that there were no antitrust violations, but found only that plaintiffs in that case failed to prove a violation of the antitrust laws. There is nothing in the terms of the stipulation indicating that Vogelstein was not to be bound by the stipulation if Lawlor fell because of a failure of proof. He agreed to be bound by the resolution of the conspiracy and monopoly issues in Lawlor. The Court in Lawlor found no unlawful conspiracy or monopoly. (Conclusions of Law 2 and 3). The distinction which Vogelstein now asserts is more semantic than legal.

■ We turn our attention now to the amendment to "Vogelstein #3". That amended complaint was filed, without leave of Court, subsequent to, and unquestionably as a result of questions asked by the Court during oral argument on the motion to dismiss "Vogelstein #3". The amended complaint is the same as "Vogelstein #3" with the exception that it contains the additional allegation that National Screen, with the knowledge and consent of the other defendants, has, since May 16, 1961, discontinued making standard accessories available to Vogelstein thereby compelling him to go out of business.

Accepting that additional allegation as true, we are not led to a different conclusion. The refusal to supply accessories to Vogelstein lacks significance absent a setting of conspiracy or monopoly. The amended complaint alleges no facts

which would supply that setting. On the issues of conspiracy and monopoly Vogelstein is still relying on the allegations contained in "Vogelstein #1" and we have earlier determined that on those issues, for the period covered by "Vogelstein #1" (1943–1949), he is now precluded.

The Court in Lawlor found during the period 1943–1949: that National Screen did not monopolize nor attempt to monopolize (Conclusion of Law 2); that none of defendants conspired with each other (Conclusion of Law 3); that National Screen was in competition with plaintiffs (Finding of Fact 126); that National Screen made standard accessories available to twenty-four sublicensees, eleven of whom were not parties to the Allied settlement (Finding of Fact 115); that there was nothing to indicate that plaintiffs could not manufacture or obtain the right to manufacture or fabricate any kind of accessories, in fact poster dealers throughout the United States other than plaintiffs manufactured and distributed various advertising accessories (Finding of Fact 116). The Court of Appeals, summarizing the findings in Lawlor, stated that "each of the film companies involved in this suit entered into the contracts [with National Screen] for a good and sufficient economic reason, namely to terminate an unprofitable feature of its business". Lawlor v. National Screen Service Corporation, 270 F.2d 146, 151 (3rd Cir. 1959). Finally, by 1952, National Screen was operating under non-exclusive licenses, and this was certainly the case after 1957 (supra, p. 1617).

That the refusal to supply accessories to Vogelstein is insufficient to upset the foregoing basic findings is apparent from the following statement by the Court of Appeals in Lawlor v. National Screen Service Corporation, 270 F.2d 146 (3rd Cir. 1959), at pp. 154–155:

"Plaintiffs have never attempted to obtain from any of the film companies licenses under which they themselves would manufacture accessories and, in fact, have expressly stated that they do not desire such licenses. In the absence of such demand upon the part of plaintiffs, the courts have consistently held that there can be no recovery in an antitrust action.

\* \* \* \* \* \*

"It is abundantly clear to this court that the plaintiffs, by their own choice, are nothing more than jobbers in the field of standard accessories, and thus come within the purview of cases involving exclusive dealerships such as Locker v. American Tobacco Co., 2 Cir., 1914, 218 F. 447 at page 450, where it was stated: 'We are unable to discover anything illegal in a manufacturer of tobacco disposing of his goods to a jobber to sell to retailers, or, if he deems it advisable, to change his policy, and sell direct to the retailer himself. Why may he not do so? One who desires to become a jobber has no right to complain because the manufacturer chooses another to do this work, unless the manufacturer owes some duty to consign his product, or a part of [sic] thereof, to him.' "

The above enumeration of the deficiencies in the Lawlor case guides our evaluation of Vogelstein's present attempt to supply those deficiencies. The single additional allegation in the amended complaint avails him little in that regard.

The amended complaint does not reveal any attempt by Vogelstein to secure a license for himself, nor any indication that such a license could not be obtained. It refers still, by incorporation of previous pleadings, to "exclusive" licenses, a situation which no longer exists. No facts are averred to meet the statement by the Court of Appeals that National Screen may refuse to supply all poster dealers including Vogelstein.

We cannot view this complaint in a vacuum. It is part of a continuum of litigation between the parties. We are bound to consider the Lawlor adjudication and the stipulation. Cf. Poster Ex-

change, Inc. v. National Screen Service Corporation, 198 F.Supp. 557 (D.C.N.D. Ga.1961).

For the foregoing reasons the motions to dismiss the complaint and the amended complaint will be granted.

In view of the ruling on the motions to dismiss it is unnecessary to reach the issue raised by defendants as to security for costs.