**Ben RHODES, d/b/a Economy Sign Company, Plaintiff,**

v.

**GWINNETT COUNTY, GEORGIA, and Board of Commissioners of Gwinnett County, Georgia, Defendants.**

Civ. A. No. C82–1358A.

United States District Court,
N.D. Georgia,
Atlanta Division.

Aug. 10, 1982.

Hill Jordan, Jordan & Jordan, Lawrenceville, Ga., for plaintiff.

James A. Henderson, Lawrenceville, Ga., for defendants.

### ORDER

SHOOB, District Judge.

The above-styled action came on for hearing July 30, 1982, on plaintiff's motion for a preliminary injunction to prevent defendant from enforcing a portion of its Zoning Ordinance dealing with the placement of signs. After due consideration, the Court has determined that plaintiff's motion for a preliminary injunction should be GRANTED.

### FACTS

The essential facts in this case are not in dispute. Plaintiff is in the business of selling and renting portable display signs to merchants in the metropolitan Atlanta area, including Gwinnett County, where plaintiff controls a substantial portion of the market for such signs. Plaintiff's customers in Gwinnett County are subject to Article XI of the county's zoning ordinance dealing with signs. Section 1101 of Article

XI, which is the section at issue in this case, provides:

> Section 1101. Signs That Are Permitted In Any Zoning District of the Unincorporated Area of Gwinnett County and Require no Building Permit. The following types of signs are permitted in any Zoning District of the unincorporated area of Gwinnett County and require no building permit.
>
> 1. Official street name, traffic direction or other official signs.
>
> 2. One business or institution identification sign on the premises of the permitted business or institution.
>
> 3. One church bulletin board not exceeding 12 square feet in area, which may be illuminated with indirect light only.
>
> 4. One sign not more than 6 square feet in area advertising the sale, lease or rental of the premises on which the sign is located except that on property fronting on an Interstate Highway, the sign may be no greater in size than 12 by 25 feet.
>
> 6. Temporary non-illuminated or indirectly illuminated construction and development signs, located on a property under development and giving the names of persons or firms engaged in the undertaking or giving the name of the project or other information pertinent to the project while it is under construction. The combined area of such signs shall not exceed 180 square feet.
>
> 7. One non-illuminated or indirectly illuminated sign not exceeding 20 square feet in area containing the name of a subdivision or neighborhood or planned shopping center or planned industrial park.
>
> 8. Directional or information signs of a quasi-public nature giving the time and place of meetings of such organizations as a Chamber of Commerce or Rotary or other service club.

Plaintiff specifically attacks subdivision (2) of § 1101. Enforcement of this portion of the ordinance has resulted in the citation of many of plaintiff's customers, because the portable sign sold or rented by plaintiff is typically a second sign on the customer's business premises[1] and is thus prohibited under § 1101(2). Once cited for violation of the ordinance, merchants have not sought to challenge its validity. Rather, they have simply required plaintiff to remove his portable signs immediately.[2] The potential effect of the county's enforcement efforts is, therefore, the virtual elimination of plaintiff's business within Gwinnett County.

Plaintiff seeks a declaratory judgment holding § 1101(2) unconstitutional as violative of the First Amendment, and temporary and permanent injunctions prohibiting Gwinnett County's continued enforcement of the ordinance.

### OPINION

In a recent decision the Court of Appeals reiterated the controlling test for the granting of a preliminary injunction:

> The four prerequisites for the issuance of a preliminary injunction are (1) a substantial likelihood that the movant will prevail on the merits; (2) a substantial threat that the movant will suffer irreparable injury if the injunction is not granted; (3) that the threatened injury to the movant outweighs the threatened harm an injunction may cause the opponent; and (4) that granting the preliminary injunction will not disserve the public interest.

Southern Monorail Co. v. Robbins & Myers, Inc., 666 F.2d 185, 186 (5th Cir.1982) (former Fifth Circuit case). Each of these factors will be addressed in turn as they apply to the facts of the instant case.

1. *Likelihood of success on the merits.* Plaintiff grounds his complaint on

---

1. Plaintiff's signs are frequently rented for temporary use to advertise a sale or some other special event such as a grand opening. Thus rarely will the plaintiff's portable sign be the only one on the premises.

2. The merchant who fails to remove a second sign within seven days of citation faces substantial risks, including fines and loss of business license.

the First Amendment, arguing that the Gwinnett County ordinance unconstitutionally interferes with commercial speech.[3] He relies on the Supreme Court's decision in *Metromedia, Inc. v. San Diego,* 453 U.S. 490, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981), which struck down a municipal ordinance that permitted on-site commercial advertising but forbade all other billboard advertising including on-site noncommercial advertising. In *Metromedia* five justices bifurcated their examination of the ordinance between its impact on commercial and noncommercial speech[4] and applied the following four-part test, originally set forth in *Central Hudson Gas v. Public Service Commission of New York,* 447 U.S. 557, 566, 100 S.Ct. 2343, 2351, 65 L.Ed.2d 341 (1980), in determining the validity of government restrictions on commercial speech:

(1) The First Amendment protects commercial speech only if that speech concerns lawful activity and is not misleading. A restriction on otherwise protected commercial speech is valid only if it (2) seeks to implement a substantial governmental interest, (3) directly advances that interest, and (4) reaches no farther than necessary to accomplish the given objective.

453 U.S. at 507, 101 S.Ct. at 2892, 69 L.Ed.2d at 815. Applying this test to the facts of the instant case, the Court finds that there is a substantial likelihood that plaintiff will succeed on the merits.

First, there is no question that the initial prerequisite is met. The Gwinnett County ordinance clearly encompasses speech that is not misleading and that concerns lawful activity.

Second, the defendant has failed to articulate any substantial governmental interest which § 1101(2) seeks to implement. Defendant does make reference to the other two sections of Article XI: § 1100, which prohibits certain types of signs that may be confused with traffic signals or otherwise mislead motorists;[5] and § 1102, which governs the size and placement of so-called "outdoor advertising" signs.[6] From these

---

**3.** Although the ordinance presumably would also apply to signs carrying noncommercial messages, plaintiff does not challenge the constitutionality of the provision on this basis.

**4.** Justice Stevens, who dissented from the resolution of the noncommercial speech issue, joined the four justice plurality (Justices White, Stewart, Marshall and Powell) as to its discussion of the regulation of commercial speech.

**5.** In full § 1100 provides:
*Section 1100. Signs Prohibited in the Unincorporated Area of Gwinnett County.* The following types of signs are prohibited everywhere within the unincorporated area of Gwinnett County.
1. Any sign that, by reason of its shape, position or color, may be confused with an authorized traffic sign or signal.
2. Any sign containing the work [sic] "stop", "look", "danger", or other similar word that may mislead and confuse traffic.
3. Any sign with flashing green, red, amber or other lights that may be confused with a traffic signal.
4. Any sign that is attached to a tree or utility pole or is attached to or painted on a rock or other natural object.
5. Any sign located within a public right-of-way unless it is an official street name sign, traffic sign or signal or other official sign.

**6.** It is not completely clear why plaintiff's signs are not permitted under the terms of this section of the ordinance, which provides in pertinent part:
*Section 1102. Outdoor Advertising Signs.* An outdoor advertising sign shall have an area of not less than 12 square feet.
An outdoor advertising sign may consist of two panels not greater in size than approximately 21 by 25 feet arranged in a V-shape or two panels side-by-side and back-to-back, or two painted signs not greater than 14 by 48 feet arranged back-to-back.
In a district in which outdoor advertising signs are listed as a permitted use, they may be erected, subject to the following conditions.
1. They shall observe the required front-yard set back of the Zoning District in which they are located.
2. No outdoor advertising sign shall be located closer than 100 feet to any public park, residence, church, school or other public or semi-public institution. Upon the establishment of such a public or semi-public area or institution, the outdoor advertising sign shall be removed within 30 days on order of the Chief Building Inspector.
3. On any property or adjoining properties in one ownership on which outdoor advertising signs are permitted, the outdoor advertising signs shall be spaced not less than 500 feet apart.

sections defendant infers that the twin goals that Article XI as a whole seeks to promote are traffic safety and aesthetics. These are both undeniably substantial governmental interests, *Metromedia, Inc., supra,* 101 S.Ct. at 2892; however, it is not at all clear that these apparent purposes behind §§ 1100 and 1102 can be imputed to § 1101 as well. Defendant offered no evidence at the hearing to support the claim that county officials were concerned about aesthetics or traffic safety when they enacted § 1101.[7]

In any case, even assuming that aesthetics and traffic safety were the concerns motivating enactment of § 1101, it does not appear that the ordinance meets the remaining two requirements of the *Central Hudson* test. While the county undoubtedly may act to prevent a proliferation of signs that would be aesthetically displeasing and distracting to passing motorists, the limitation of one business sign on the premises of each business does not directly advance the claimed interests in either traffic safety or aesthetics. Counsel for defendant indicated that *any* sign would be permissible under § 1101(2) so long as it constituted only *one* sign, and that plaintiff's signs would therefore be legal if they were attached somehow to any other sign on the premises. It follows that any imaginable aggregation of signs, no matter how offensive or distracting, would likewise be permitted under § 1101(2) so long as each of the component signs were pieced together to form a single whole.[8] Defendant's own argument thus contradicts any assertion

that § 1101(2) furthers the claimed governmental goals.

Finally, the ordinance fails to meet the fourth prerequisite that it reach no farther than necessary to accomplish its objective. Just as § 1101(2) permits a *single* sign regardless of how offensive or distracting, so it also prohibits any further signs no matter how attractive or inconspicuous. Hence the ordinance prohibits an indeterminate number of signs which would be neither aesthetically offensive nor distracting to motorists.

For all the above reasons, the Court concludes that plaintiff is likely to succeed on the merits of his complaint and therefore satisfies the first prerequisite for preliminary injunctive relief.

2. *Irreparable injury if injunction is not granted.* In *Elrod v. Burns,* 427 U.S. 347, 373, 96 S.Ct. 2673, 2690, 49 L.Ed.2d 547 (1976), the Supreme Court held that: "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." Most courts have granted preliminary injunctive relief in cases where a deprivation of constitutional rights has been alleged and a strong probability of success on the merits has been established without requiring additional proof of irreparable harm. *See* 11 C. Wright & A. Miller, Federal Practice and Procedure § 2948, at p. 440 n. 39. Therefore, because it appears that plaintiff will succeed on the merits of his First Amendment claim, the Court concludes that the requisite threat of irreparable harm has been shown.[9]

---

On its face there is nothing here to prohibit the type of advertising sign supplied by plaintiff, and by implication such signs would therefore appear to be permitted. However, counsel for defendant indicates that there is no conflict with § 1101(2) because it is his understanding that § 1102 applies only to *off-site* advertising signs, or "billboards".

**7.** As the Court of Appeals has recently noted, "such measures [must] be defended only on the basis of considerations actually contributing to their enactment." *Dills v. City of Marietta,* 674 F.2d 1377, 1381 (11th Cir.1982) (citations omitted).

**8.** Of course, the sign might nevertheless be prohibited under one of the subdivisions of § 1100, note 5 *supra.*

**9.** Apart from the constitutional deprivation plaintiff has also shown potential irreparable economic injury. Plaintiff testified that enforcement of the ordinance has adversely affected his ability to do business in Gwinnett County and surrounding areas as well. Many of plaintiff's customers operate chain stores, such as fast food franchises, with many different outlets in the Atlanta area. When such a customer has a store within Gwinnett County cited for violation of the sign ordinance, he typically orders plaintiff to remove his signs at all locations both within and without the coun-

3. *Balance of the threatened harms.* Any possible harm to be suffered by defendant should the injunction issue appears purely speculative as compared to the very real threat of plaintiff's loss of his livelihood. As the prior analysis has shown, the challenged ordinance does not directly further any substantial governmental interest. Hence an injunction against its enforcement will not impair any such interest. The balance of the equities is therefore clearly in plaintiff's favor.

4. *Public Interest.* The Court is convinced that the public interest will not be disserved by the issuance of an injunction. The defendant has not shown that an injunction against enforcement of § 1101(2) would in any way impair the public's interest in traffic safety or aesthetics; the other sections of Article XI that further these legitimate interests will, of course, remain in full force. Should the county see a further need to regulate the proliferation of signs beyond those restrictions already contained in the unchallenged portions of Article XI, then other avenues more narrowly tailored to meet that end remain open.[10]

It appearing, therefore, that plaintiff meets all the prerequisites for issuance of a preliminary injunction, defendant Gwinnett County and its Board of Commissioners are hereby ENJOINED from enforcing Article XI, section 1101, subdivision 2, of the Gwinnett County Zoning Ordinance until further order of this Court.

IT IS SO ORDERED, this 10th day of August, 1982.

---

ty. Thus the Gwinnett County ordinance threatens plaintiff's business even beyond its actual jurisdictional boundaries. Where plaintiff's potential economic loss thus threatens his entire business, an injunction is appropriate even though the amount of direct financial harm is readily ascertainable. *Poster Exchange, Inc. v. National Screen Serv. Corp.,* 198 F.Supp. 557 (S.D.Ga.1961), *aff'd,* 305 F.2d 647 (5th Cir.1962).

**10.** The county might, for example, limit the number of square feet of commercial sign space on each business premises.