NATIONAL SCREEN SERVICE COR-
PORATION, Appellant,

v.

The POSTER EXCHANGE, INC.,
Appellee.

No. 19355.

United States Court of Appeals
Fifth Circuit.

July 11, 1962.

Walter S. Beck, New York City, Charles A. Moye, Jr., E. Smythe Gambrell, Gambrell, Harlan, Russell, Moye & Richardson, Atlanta, Ga., Phillips, Nizer, Benjamin, Krim & Ballon, New York City, for appellant.

C. Ellis Henican, Jr., New Orleans, La., Trammell E. Vickery, Jones, Bird & Howell, Atlanta, Ga., Henican, James & Cleveland, New Orleans, La., for appellee.

Before TUTTLE, Chief Judge, and JONES and GEWIN, Circuit Judges.

GEWIN, Circuit Judge.

National Screen Service Corporation, defendant-appellant, has appealed from an order of the United States District Court for the Northern District of Georgia, which denied appellant's motion for summary judgment and granted The Poster Exchange, Inc., plaintiff-appellee, a preliminary injunction which in effect

directed appellant, until further notice or order of the Court, to continue business dealings with appellee "upon the same terms and conditions which prevailed prior to February 15, 1961." [1]

The complaint charges National Screen with violation of § 2 of the Sherman Act. It is alleged that National is utilizing its monopoly position as sole manufacturer and distributor of motion picture accessories to exclude competition between National and Poster Exchange and to maintain and extend its already monopolistic market position in the distribution of such accessories with regard to films released through the major distributors of motion pictures.

The device used for such purpose is alleged to be a refusal by National to deal with Poster Exchange. There is an allegation that this alleged *refusal to deal* is inflicting irreparable damage upon Poster Exchange, since its business demands the ability to supply customers promptly with accessories which are available only through National.

Poster Exchange is a poster-renter or "jobber" engaged in the business of selling or renting to motion picture theatres standard motion picture advertising accessories, such as posters and stills for theatre billboards and lobbies. National has for many years been engaged in the business of manufacturing and distributing such motion picture advertising accessories directly to motion picture theatres as well as to poster-renter jobbers such as Poster Exchange. This resulted in National competing with its "jobbers" for the motion picture theatre's advertising business. Poster Exchange has obtained accessories from National since the year 1947 in substantial quantities. The market area involved embraces cities in the states of Alabama, Georgia, Florida and Tennessee. National also supplies exhibitors in the same area and both are engaged in interstate commerce. There is no contractual relationship between the parties.

National notified Poster Exchange on February 15, 1961, that from and after May 16, 1961, National would no longer make accessories available to poster-renter "jobbers" such as Poster Exchange, but would restrict its business to dealing solely and directly with motion picture theatres, often referred to as exhibitors.

Prior to 1952, National Screen had an exclusive license from the motion picture companies to manufacture and distribute motion picture advertising accessories. There is some dispute as to whether the license was exclusive between 1952 and 1957 or non-exclusive, but in 1957 National Screen entered into a "Consent Decree" with the government [2] in a case

---

1. This appeal is pursuant to permission granted by order of this Court dated November 14, 1961. In denying National Screen's motion for summary judgment, the trial court expressed the opinion that its order involved a controlling question of law as to which there is substantial ground for difference of opinion, and that an immediate appeal may materially advance the ultimate termination of the litigation.

2. "(A) Subject to the other provisions in this Section V, each Producer Defendant is ordered and directed to grant to any qualified person applying therefor a license (including a license under the Producer Defendant's copyrights) to produce and distribute any type of trailers or to produce and distribute accessories relating to motion pictures released by the Producer Defendant, so long as and to the extent that the Producer Defendant or its distributor (as provided for below) licenses or otherwise authorizes any other person * * * to produce and distribute the trailers or the accessories sought to be produced and distributed by the person applying for the license; Provided, however, that any such license so granted may require reasonable terms and conditions (including payment of a reasonable royalty) agreed to by the Producer Defendant. In the event a Producer Defendant turns over distribution of its motion pictures to a non-affiliated distributor not a defendant herein, such Producer Defendant must either itself license pursuant to this Subsection (A) to require such distributor so to do.

"(B) No Producer Defendant shall be required to regard any person as a qualified applicant within the meaning of Subsection (A) of this section unless: (1) The applicant can meet and will agree

then pending in the United States District Court, Southern District of New York, styled United States of America v. National Screen Service Corp., et al.

The crux of this "Consent Decree" was to give Poster Exchange (and others) the qualified right to obtain its own license to manufacture and distribute its own accessories and to compete with National in the market.

Poster Exchange is not presently, nor has it ever been, in the business of manufacturing motion picture accessories. Conceding that it has been in active competition with National for many years, Poster Exchange urges that National should be required to continue to make available to it the advertising accessories which National manufactures. Poster Exchange contends that unless the Court enjoins National from refusing to deal with it, then it will be eliminated as a competitor since National enjoys a monopolistic position in this particular market.

National asserts that Poster Exchange in its position as "jobber" does not have a vested right to require National to assume all of the business risks of manufacturing the accessories and then be required to furnish Poster Exchange with its needs. National further asserts that by virtue of the "Consent Decree" supra, National does not now and cannot ever enjoy a "monopoly" of the motion picture advertising accessory business.

National, in response to an application by Poster Exchange for a temporary injunction, moved for summary judgment, and in support thereof filed affidavits. In response to National's motion for summary judgment, Poster Exchange filed an affidavit by its president, in opposition, and National thereupon filed a further affidavit. The deposition of M. J. Rogers, President of Poster Exchange, was taken by National. National contends that the admission of Mr. M. J. Rogers in his deposition that Poster Exchange had never applied for a license to manufacture said accessories, removes all material issues of fact from the case and requires the Court to enter a judgment for National as a matter of law.

After the Court's order denying summary judgment and granting the preliminary injunction, National appealed. Accordingly, the issues before this Court are: (1) Whether the District Court erred in denying National's Motion for Summary Judgment; and, (2) Whether the District Court abused its discretion in granting a preliminary injunction to Poster Exchange.

Taking the questions in reverse order, it is clear that the granting or refusing a preliminary injunction is in the sound discretion of the trial judge. It appears that the District Judge concluded that to grant the temporary order would adequately protect Poster Exchange pending a trial on the merits; whereas a denial of the relief would result in the destruction of its business, giving National benefit of a result it should obtain only by winning the case on its merits. In effect, the District Court's action in this regard serves to continue a relationship which has existed voluntarily between the parties for years. We cannot conclude that such action is a clear abuse of discretion. Joseph Bancroft & Sons Co. v. Shelley Knitting Mills, Inc., 3 Cir., 268 F.2d 569 (1959); Burton v. Matanuska Val. Lines, Inc., 9 Cir., 244 F.2d 647, 17 Alaska 298, (1957); Jiminez v. Barber, 9 Cir., 252 F.2d 550 (1958). The other question is the more serious one, and requires a thorough examination of the cases.

We come first to a consideration of the applicable principles relating to summary judgments under Federal Rule of Civil Procedure 56, 28 U.S.C.A.

to meet reasonable business standards as to reliability, financial responsibility, ability, production facilities and a national distribution organization and facilities to service, with respect to all feature motion pictures released by the Producer Defendant, all exhibitors desiring such service. Provided, however, that the size of the organization and facilities of National Screen shall not be used as the standard for determining the adequacy of the applicant's qualifications."

The law is well settled that in order to entitle the moving party to summary judgment, it must be clearly shown: (1) that there is no genuine issue as to any material fact in the case; and (2) that he is entitled to a judgment in his favor as a matter of law. The rule should be invoked cautiously in order to allow a full trial where there is a bona fide dispute of facts between the parties. Summary judgment should be granted only where the moving party is entitled to judgment as a matter of law, *where it is quite clear what the truth is*, when no genuine issue remains for trial, and it is not the purpose of the rule to deny to litigants a right of trial if they really have issues to try. Sartor et al. v. Arkansas Natural Gas Corp., 321 U.S. 620, 64 S.Ct. 724, 88 L.Ed. 967; Associated Press et al. v. U. S., 326 U.S. 1, 65 S.Ct. 1416, 89 L.Ed. 2013; Eccles v. People's Bank of Lakewood Village, 333 U.S. 426, 68 S.Ct. 641, 92 L.Ed. 784. It is no part of the duty of the Court to decide factual issues, but only to determine whether there are factual issues to be tried. Slagle v. U. S., 5 Cir., 228 F.2d 673.

The moving party has the burden of positively and clearly demonstrating that there is no genuine issue of fact and any doubt as to the existence of such an issue is resolved against him. Heyward v. Public Housing Administration et al., 5 Cir., 238 F.2d 689. A long line of cases have held that summary judgment should not be granted if there is the "slightest doubt" as to the facts; which is actually another way of stating that there is no genuine issue as to any material fact. The fact that it may be surmised that the party against whom the motion is made is unlikely to prevail at the trial is not sufficient to authorize summary judgment against him. Bruce Construction Corp. et al. v. U. S., 5 Cir., 242 F.2d 873; Barron & Holtzoff, Vol. 3 § 1234, p. 124 and 132. The burden is heavy on the moving party to establish clearly his right to summary judgment.

See Moore's Federal Practice, 2d Ed. ¶ 56.11[3] ¶ 56.15[3]. Even in cases where the movant has technically discharged his burden, the trial court in the exercise of a sound discretion may *decline* to grant summary judgment. Moore's Federal Practice, 2d Ed. ¶ 56.23, p. 2340. It is likewise held that discretion plays no real role in the *grant* of a summary judgment; it being held that the granting of such judgment must be proper or such action is subject to reversal. The exercise of sound discretion applies only in *denying* such motions in appropriate circumstances. Moore's Federal Practice, 2d Ed., ¶ 56.24, p. 2342.[3]

Illegal monopolies are condemned by the Sherman Antitrust Act 15 U.S.C.A. § 1 et seq. Every illegal monopoly is condemned regardless of the circumstances which brought it into existence. The law does not condition its condemnation upon a history of misconduct or baleful practices. Indeed, a position of illegal monopoly may be achieved by enterprise and sagacity. Associated Press et al. v. U. S., supra; U. S. v. Klearflax Linen Looms, Inc., 63 F.Supp. 32 (D.Minn.). The symptoms are not always the same. In its common forms, price fixing, price leadership, and exclusion of competitors from the market are criteria of illegality under the act. In any case the real question is whether there is an illegal monopoly. Gamco, Inc. v. Providence Fruit & Produce Building, 1 Cir., 194 F.2d 484. In practically all cases where a course of conduct is under inquiry, the universal test seems to be whether there is "any purpose to create or maintain a monopoly." Lorain Journal Co. v. United States, 342 U.S. 143, 72 S.Ct. 181, 96 L. Ed. 162 (1953); United States v. Colgate Co., 250 U.S. 300, 39 S.Ct. 465, 63 L.Ed. 992, 7 A.L.R. 433 (1919); Restatement of the Law, Torts, Vol. 4, § 764, p. 41 (1939). Thus it has been held that *absent monopoly*, an individual has full freedom to sell or buy from any per-

3. For a comprehensive treatment of the subject of Summary Judgments, see Asbill and Snell, SUMMARY JUDGMENTS, Etc., 51 Mich.L.Rev. 1143.

son for any reason. Such is the rule in cases involving exclusive dealing, Leo J. Meyberg Co. v. Eureka Williams Corp., 9 Cir., 215 F.2d 100, cert. den. 348 U.S. 875, 75 S.Ct. 113, 99 L.Ed. 689 (1954); Hudson Sales Corp. v. Waldrip, 211 F.2d 268, 5 Cir., cert. den. 348 U.S. 821, 75 S.Ct. 34, 99 L.Ed. 648 (1954); Nelson Radio & Supply v. Motorola, Inc., 5 Cir., (1952), 200 F.2d 911, cert. den. 345 U.S. 925, 73 S.Ct. 783, 97 L.Ed. 1356 (1953); enforcement of territorial restrictions on sales outlets, Boro Hall Corp. v. General Motors Corp., 37 F.Supp. 999 (S.D.N.Y. 1941), aff'd 124 F.2d 822, 2 Cir., (1942), rehearing denied 130 F.2d 196 (1942), 2 Cir., cert. den. 317 U.S. 695, 63 S.Ct. 436, 87 L.Ed. 556 (1943); unilateral refusals to buy, Federal Trade Comm. v. Raymond Bros.-Clark Co., 263 U.S. 565, 44 S.Ct. 162, 68 L.Ed. 448, 30 A.L.R. 1114 (1924); the right to refuse to deal, Times-Picayune Publishing Co. v. United States, 345 U.S. 594, 73 S.Ct. 872, 97 L.Ed. 1277; Moore v. New York Cotton Exchange, 270 U.S. 593, 46 S.Ct. 367, 70 L.Ed. 750, 45 A. L.R. 1370 (1926); United States v. Griffith, 334 U.S. 100, 68 S.Ct. 941, 92 L.Ed. 1236 (1947); Schine Chain Theatres, Inc. v. United States, 334 U.S. 110, 68 S.Ct. 947, 92 L.Ed. 1245 (1948); American Tobacco Co. v. United States, 328 U.S. 781, 66 S.Ct. 1125, 90 L.Ed. 1575 (1946); Eastman Kodak Co. v. Southern Photo Materials Co., 273 U.S. 359, 47 S.Ct. 400, 71 L.Ed. 684 (1927). There are numerous other circumstances and factual situations where the same test has been applied. Ultimately, the courts must decide under the facts in each case the point at which freedom to trade must give way to control under § 2 of the Sherman Act. An individual's freedom to trade in the market is unqualified so long as a monopoly is not sought or enjoyed.

While not admitting in any sense that it is in a position of monopoly, the appellee, National Screen, urgently contends that the appellant is not in a position to complain under the facts present in this case because Poster Exchange could have, under the protective provisions of the "Consent Decree", applied for its own non-exclusive licenses from motion picture producers to manufacture and distribute its own motion picture advertising accessories. The President of Poster Exchange admitted that no such application had ever been made. Such a contention, even if Poster Exchange could have applied for and obtained such a non-exclusive license, is not a complete defense. The fact that the plaintiff in this case may have the theoretical opportunity to "shift for itself" is not a full answer. Gamco, Inc. v. Providence Fruit & Produce Building, supra; American Federation of Tobacco Growers, Inc. v. Neal, 4 Cir. (1950), 183 F.2d 869. See also Associated Press et al. v. United States, supra, notes 16 and 17 which in effect hold that the possibility of obtaining substitute facilities is not a sufficient answer if there is in fact a monopoly; or if the facts show that the course of conduct complained about tends to promote the achievement of a complete monopoly to the extent that will deprive the public of the advantages which flow from free competition in interstate commerce.

National Screen relies heavily upon the well written opinion in the case of Lawlor v. National Screen Service Corp., 3 Cir., 270 F.2d 146 (1959), which contains an excellent review of the history of the manufacture and distribution of these advertising accessories by the motion picture companies and their eventual licensing of such manufacture and distribution to National Screen. The Lawlor case was concerned with whether the exclusive license given National Screen by the major producers of films to manufacture and distribute such accessories violated the Sherman Act. It was held that it did not. Attached to one of the affidavits of National Screen are a total of 140 findings of fact and 12 conclusions of law by Judge C. William Kraft, Jr. when the case was tried in the District Court. National Screen insists that such findings and conclusions of the District Court, affirmed in Lawlor v. National Screen Service Corp., supra, are completely controlling in the instant case. Such findings and conclusions of the

District Court are noteworthy. The court found that the plaintiffs in that case failed to submit evidence that National Screen, in an effort to destroy plaintiffs' business, failed to fulfill plaintiffs' requirements and requests for such accessories; that there were other sources during the years in question from which the plaintiffs could and did acquire posters; and that the plaintiffs suffered no damage or injury to their business or property as a result of any action on the part of National Screen. The District Court concluded as a matter of law that National Screen did not monopolize or attempt to monopolize within the meaning of § 2 of the Sherman Act; that the plaintiffs were not persons injured in their business or property within the meaning of § 4 of the Clayton Act, 15 U.S.C.A. § 15 by reason of any action or conduct of any of the defendants; that the plaintiffs failed to show any damage

sustained by them as the result of any action or conduct of any of the defendants; failed to show any threatened injury to themselves within the meaning of § 16 of the Clayton Act, 15 U.S.C.A. § 26 by reason of any action or by conduct of any of the defendants; and further, that by reason of certain facts found, the plaintiffs were estopped from maintaining the action against National Screen and the other defendants.[4]

In the circumstances of the Lawlor case at the time involved and under the facts therein found, the court held that since the plaintiffs had never attempted to obtain from any of the film companies licenses under which they themselves could manufacture accessories, they were precluded from recovery in an antitrust action against National Screen.

It is pertinent to point out that the District Court of Georgia in its finding

4. The following conclusions of fact are taken from Judge Kraft's findings:

"118. Plaintiffs failed to submit evidence sufficient to support their allegations in plaintiffs' amended complaint that National Screen, in an effort to destroy plaintiffs' business, deliberately and maliciously failed to fulfill plaintiffs' requirements and requests for standard accessories in time for plaintiff to service and deliver such standard accessories to their exhibitor customers."

"132. During the period when the defendant film companies produced and distributed accessories through local film exchanges, some of the producers caused to be made and distributed a 40 x 60 poster similar in size to a specialty accessory then manufactured and distributed by National Screen. Such 40 x 60 posters were distributed by Universal Film Exchanges, Inc., Columbia, United Artists and Fox in connection with only approximately 5% of their respective pictures. When these 40 x 60 posters for approximately 5% of the films produced each year by such producers were available to the plaintiffs at the respective film exchanges, plaintiffs purchased during the entire period in suit only two of such 40 x 60 posters— one from Fox in 1943 for $1.25 and the other in 1943 from Columbia, for $1.00. And even with respect to these instances, plaintiffs lost money."

"138. From 1943 to 1949, the period in suit, the plaintiffs suffered no dam-

age or injury to their business or property as a result of any action of any of the defendants herein complained of by the plaintiffs."

The following conclusions of law reached by Judge Kraft in the District Court are also pertinent:

"3. The defendant, National Screen, did not monopolize or attempt to monopolize within the meaning of Section 2 of the Sherman Act."

"5. The plaintiffs are not persons injured in their business or property within the meaning of Section 4 of the Clayton Act by reason of any action by or conduct of any of the defendants."

"6. The plaintiffs failed to show any damage sustained by them as a result of any action or conduct of any of the defendants."

"7. The plaintiffs failed to show any threatened injury to themselves within the meaning of Section 16 of the Clayton Act by reason of any action by or conduct of any of the defendants."

"8. By reason of the facts hereinbefore found plaintiffs are estopped from maintaining this action against the defendants National Screen, Columbia, RKO, United Artists and Fox and from asserting any claim by reason of any action by or conduct of any of those five defendants about which the plaintiffs complain."

of fact No. 14 concluded that even though the "Consent Decree" in effect gives any jobber the right to acquire his own license, most picture film distributors have traditionally insisted that licensees who manufacture such accessories must have national distribution facilities and that National Screen is the only concern meeting such a requirement and is the only concern so licensed as a matter of fact. In finding No. 15 the trial court concluded that Poster Exchange does not have nor has it ever had facilities or resources to manufacture, or national distribution facilities with which to distribute standard motion picture accessories.

The facts and the period of time involved in the Lawlor case are substantially different from those under consideration in the instant case. In the Lawlor case the facts were fully developed. Here, we are considering the refusal of the trial court to grant a summary judgment with limited facts presented by affidavits and one deposition.

Attached to one of the affidavits relied on by National is the ruling of Judge Rizley of the United States District Court for the Western District of Oklahoma in a cause styled, Bob Smith d/b/a Theatre Poster Service, Plaintiff v. Paramount Film Distributing Co. et al., Defendants. In refusaing to grant a temporary restraining order, the court made the following pertinent observation:

"Of course, upon the trial of this case upon its merits, if it is established that there is an unholy alliance between these people or that what has been done amounts to cutting off any competition so far as the National Screen is concerned, then of course the Court would look at it differently * * *."

National Screen further relies strongly on the case of House of Materials, Inc. v. Simplicity Pattern Co., Inc., 2 Cir. (1962) 298 F.2d 867. In that case however, the court in its opinion is careful to point out the following fact which is of the utmost legal significance:

"There is no suggestion here that Simplicity's action constituted a violation of the anti-monopoly provision of the Sherman Act, 15 U.S.C.A. § 2. It is not alleged that Simplicity monopolized the market or by its refusal to deal attempted to achieve a monopoly. In fact, Simplicity's action in terminating the contracts of a number of its customers necessarily created *an added market for its competitors*. Moreover, we think it too plain to merit discussion that Simplicity's 'refusal to deal' cannot be regarded as a violation of the Clayton Act." (emphasis supplied.)

We find no conflict between the other authorities cited by National Screen and the conclusions herein reached.

It should be pointed out that we are not here holding that National Screen is a monopoly; or that it has engaged upon a course of conduct which will establish it as such, either nationally or in the market area involved; that National Screen's refusal to deal did not originate from the legitimate exercise of business judgment; or that its purpose was to eliminate the plaintiff as a competitor and thereby obtain a monopoly in the market area involved; or that the plaintiff does not have effective, competitive alternatives; and we do not intend to foreclose inquiry into other pertinent facts. We do agree with the distinguished trial court that the answer to these questions is not made clear by the record presented to the court. They are open questions to be decided. We are holding that the trial court was entirely justified in refusing to grant the motion of National Screen for summary judgment because there are issues of material fact remaining in the case, and we cannot say as a matter of law that National Screen is entitled to judgment. This opinion should not be construed to intimate a prediction as to which of the parties will prevail at the trial when the truth becomes clear. The trial court exercised a sound discretion in denying the motion.

The judgment is

Affirmed.