The **POSTER EXCHANGE, INC.,**
Appellant,

v.

**NATIONAL SCREEN SERVICE CORPORATION,** Appellee.

No. 22673.

United States Court of Appeals
Fifth Circuit.

June 20, 1966.

Francis T. Anderson, Yeadon, Pa., for appellant.

Walter S. Beck, New York City, Charles A. Moye, Jr., Atlanta, Ga., for appellee.

Before TUTTLE, Chief Judge, BELL, Circuit Judge, and KILKENNY,* District Judge.

TUTTLE, Chief Judge:

This is a private action, seeking treble damages for an alleged violation of Section 2 of the Sherman Act.[1] The district court previously denied defendant's (appellee here; hereinafter referred to as defendant) motion for summary judgment, and that action was upheld by this Court at 305 F.2d 647 (5th Cir. 1962). In so affirming, this Court outlined the facts and the history of the litigation between these parties, as well as other relevant litigation, noting defendant's success in defending similar charges in the courts. The crux of that opinion, for present purposes, lies in this Court's summary, at 651–652, of the legal principles which would govern upon trial as follows:

"Illegal monopolies are condemned by the Sherman Antitrust Act 15 U.S. C.A. § 1 et seq. Every illegal monopoly is condemned regardless of the circumstances which brought it into existence. The law does not condition its condemnation upon a history of misconduct or baleful practices. Indeed, a position of illegal monopoly may be achieved by enterprise and sagacity. * * * In practically all cases where a course of conduct is under inquiry, the universal test seems to be whether there is 'any purpose to create or maintain a monopoly.' * * * Thus it has been held that *absent monopoly*, an individual has full freedom to sell or buy from any person for any reason. Such is the rule in cases involving exclusive dealing, * * * unilateral refusals to buy, * * * the right to refuse to deal, * * *. There are numerous other circumstances and factual situations where the same test has been applied. Ultimately, the courts must decide under the facts in each case the point at which freedom to trade must give way to control under § 2 of the Sherman Act. An in-

---

* Of the District of Oregon, sitting by designation.

1. Section 2 reads, in relevant part:
   "Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a misdemeanor * * *."

Appellant's Section 1 claim, along with the alleged conspiracy upon which it was based has been eliminated from this case. Poster Exchange Inc. v. National Screen Service Corp., 35 F.R.D. 558 (N.D.Ga.1963), aff'd per curiam 340 F.2d 320 (5th Cir. 1965).

dividual's freedom to trade in the market is unqualified so long as a monopoly is not sought or enjoyed."

In response to defendant's contention that plaintiff is in no position to complain of defendant's unlawful activity (assuming, arguendo, such a monopoly exists), because plaintiff, under the protective provisions of a previous consent decree entered in a suit between the Government and defendant, could have applied to motion picture producers for its own non-exclusive licenses to manufacture and distribute motion picture advertising accessories, the Court said, at 305 F.2d 652,

> "that the possibility of obtaining substitute facilities is not a sufficient answer if there is in fact a monopoly; or if the facts show that the course of conduct complained about tends to promote the achievement of a complete monopoly to the extent that will deprive the public of the advantages which flow from free competition in interstate commerce."

Finally the Court discussed a prior case, Lawlor v. National Screen Service Corp., 270 F.2d 146 (3d Cir. 1959), upon which defendant, both then and now, places great reliance. In *Lawlor* it was held, *after a trial on the merits,* that defendant did not monopolize or attempt to monopolize within the meaning of Section 2 of the Sherman Act. Concerning *Lawlor,* this Court said:

> "The facts and the period of time involved in the Lawlor case are substantially different from those under consideration in the instant case. In the Lawlor case the facts were fully developed. Here, we are considering the refusal of the trial court to grant a summary judgment with limited facts presented by affidavits and one deposition."

Upon remand of this case, defendants renewed their motion for summary judgment. The district court, relying upon "admissions" of plaintiff's attorney that his case against defendant depended upon his prevailing on the conspiracy issue,[2] and stating that it was in agreement with cases resolving "this issue of law" in favor of the defendant,[3] granted the motion.

As to the allegedly fatal "admission" to the lower court by plaintiff that his case would rise or fall with the court's disposition of the conspiracy issue, it should be noted that the statement upon which the district court relied appeared solely in the context of plaintiff's case against the motion picture distributors.[4] Certainly, in attempting to describe his Section 1 case against *all* of the defendants, plaintiff's attorney should not be held to have relinquished his Section 2 claim against National Screen. To give this statement such a binding effect would discourage frankness and candor on the part of attorneys in their relationships with the judiciary. Accordingly, we hold that plaintiff made no fatal admission regarding his Section 2 case against National Screen.

This leaves this case in exactly the same posture as this Court found it on the first appeal, with one possible exception: The supervening *per curiam* pronouncement of the Third Circuit in Vogelstein v. National Screen Service Corp., 310 F.2d 738 (1962), cert. denied, 374 U.S. 840, 83 S.Ct. 1894, reh. denied, 375 U.S. 873, 84 S.Ct. 34. With regard to *Vogelstein,* it should be noted that the opinion of the district court (The only opinion written in that case), granting National Screen's motion to dismiss, relied largely upon the *Lawlor* case, which, as noted above, was fully considered by this Court on the first appeal. Moreover, the *Vogelstein* opinion does not cite

2. By this time the conspiracy issue had been resolved against plaintiff, see note 1, supra.

3. Citing Lawlor, supra, and Vogelstein v. National Screen Service Corp., D.C., 204 F.Supp. 591 (1962), aff'd per curiam,

310 F.2d 738 (3d Cir.), cert. denied, 374 U.S. 840, 83 S.Ct. 1894, 10 L.Ed.2d 1061; reh. denied, 375 U.S. 873, 84 S.Ct. 34, 11 L.Ed.2d 103.

4. See note 1, supra.

the Supreme Court cases upon which plaintiff bases its contention that defendant has violated Section 2 of the Sherman Act—cases which, according to this Court, 305 F.2d 651–652 (and the lower court initially, 198 F.Supp. 557, 561), entitled plaintiff to a trial on the merits.

■ Nor is it true, as urged by defendant, that the Supreme Court's denial of certiorari in *Vogelstein* is in any sense a legal "determination" in favor of the view of the Third Circuit. In the words of the Court:

"a denial of certiorari means only that, for one reason or another which is seldom disclosed, and not infrequently for conflicting reasons which may have nothing to do with the merits and certainly may have nothing to do with any view of the merits taken by a majority of the Court, there were not four members of the Court who thought the case should be heard."

Brown v. Allen, 344 U.S. 443, 492, 73 S.Ct. 397, 439, 97 L.Ed. 469 (1953) (Mr. Justice Frankfurter stating the position of a majority of the Court on this point). See also United States v. Shubert, 348 U.S. 222, 228–229, note 10, 75 S.Ct. 277, 99 L.Ed. 279 (1955); Wright, Federal Courts Section 108 at p. 431 (1963 ed.).

■ Although the "law of the case" doctrine, as applied in the federal courts,

"does not rigidly bind a court to its former decisions, but is only addressed to its good sense," Higgins v. California Prune & Apricot Grower, Inc., 3 F.2d 896 (2d Cir. 1924), nevertheless, since that rule is "based upon sound policy that when an issue is once litigated and decided, that should be the end of the matter," Fontainebleau Hotel Corp. v. Crossman, 286 F.2d 926, 928 (5th Cir. 1961), some good reason must be shown why the prior ruling is no longer applicable or should not be followed, in order to justify a departure therefrom. See 1 A Moore's Federal Practice ¶ 404[1] at pp. 4201, 4204 (2d ed. 1961). The *Vogelstein* case did not change the law. The Supreme Court has held more than once that Section 2 of the Sherman Act forbids refusals to deal for monopolistic ends.[5] The same facts which the district court and this court initially found to be in issue, are still in issue. The considerations which dictated this Court's well-considered affirmance of the district court's initial dismissal of defendant's motion for summary judgment, 305 F.2d 647, are still valid. Accordingly, since the defendant's renewed summary judgment motion raised no new legal issues not foreclosed by the mandate of this Court at 305 F.2d 647, the judgment is reversed and the case is remanded for proceedings not inconsistent with this opinion.

---

5. See Lorain Journal Co. v. United States, 342 U.S. 143, 155, 72 S.Ct. 181, 96 L.Ed. 162 (1951); Eastman Kodak Co. v. Southern Photo Materials Co., 273 U.S. 359, 375, 47 S.Ct. 400, 71 L.Ed.2d 684 (1927); see also United States v. Klearfax Linen Looms, Inc., 63 F.Supp. 32 (D. Minn.1945).

As stated in the 1955 Report of the Attorney General's Committee to Study the Antitrust Laws at 137:

"A refusal to deal may lend itself to abuse as an instrument of monopoly power, and can implement a broader course of conduct in restraint of trade. Hence we believe that only thorough-going factual inquiry into the surrounding business circumstances can characterize a refusal to deal as part of a restrictive course of conduct incompatible with antitrust objectives."