APAC–MISSISSIPPI, INC. Plaintiff

v.

JAMES CONSTRUCTION GROUP, L.L.C., formerly known as Angelo Iafrate Construction, L.L.C., and National Fire Insurance Company of Hartford Defendants

No. CIV.A.3:04–CV–26BN.

United States District Court, S.D. Mississippi, Jackson Division.

March 2, 2005.

Order denying reconsideration May 6, 2005.

Dorsey Reese Carson, Jr., David Watkins Mockbee, Mockbee, Hall & Drake, PA, Jackson, MS, for APAC–Mississippi, Inc., Plaintiff.

John M. Madison, III, Murphy J. Foster—PHV, III, Breazeale, Sachse & Wilson, Baton Rouge, LA, for James Construction Group, LLC formerly known as Angelo Iafrate Construction, L.L.C., National Fire Insurance Company of Hartford, Defendants.

## OPINION AND ORDER

BARBOUR, District Judge.

Before the Court are three motions. The first is Plaintiff's Motion for Partial Summary Judgment, filed December 10, 2004. The second is Defendants' Motion for Partial Summary Judgment, filed December 13, 2004. The third is Defendants' Motion to Strike the Affidavit of John Terry May and Exhibits, filed January 5, 2005. Having considered the Motions, Responses, Rebuttals, attachments to each, and supporting and opposing authority, the Court finds that Defendants' Motion for Partial Summary Judgment is well taken and should be granted. The Court further finds that Plaintiff's Motion for Partial Summary Judgment is not well taken and should be denied, and that Defendants'

Motion to Strike Affidavit of John Terry May and Exhibits should be denied as moot.

## I. Background and Procedural History

The Mississippi Department of Transportation ("MDOT") awarded Defendant James Construction Group, L.L.C., formerly known as Angelo Iafrate Construction, L.L.C. ("Iafrate"), a contract to construct the Nissan—I-55 interchange in Madison County, Mississippi ("the Project"). As required under Mississippi law, Iafrate obtained a performance and payment bond from co-Defendant National Fire Insurance Company ("National"), and National thereby served as surety to Iafrate.

On June 19, 2001, Iafrate entered into a contract ("the Purchase Order") with Plaintiff APAC–Mississippi, Inc. (referred to as "APAC" or Plaintiff), whereby APAC agreed to supply construction project materials to Iafrate. The dispute in this case centers around payments that Iafrate sent to APAC for those materials.

Miss.Code Ann. § 31–5–27 (referred to as " § 31–5–27" or "the statute"), as fully recited *infra*, provides that generally a prime contractor such as Iafrate is to pay a subcontractor such as APAC within fifteen days from when Iafrate receives project monies from MDOT. If a contractor fails to make the necessary payments to a subcontractor within this time frame, § 31–5–7 provides for interest to accrue on the unpaid principal.

APAC contends that Iafrate failed to adhere to the dictates of § 31–5–27. Although at this date Iafrate has paid the entire principal amount due APAC, APAC contends that pursuant to § 31–5–27, it is entitled to $1,173,013.47, in statutory damages. APAC argues that this amount reflects the amount in interest due APAC for payments received outside of the applicable fifteen day time limit for payments.

Iafrate contends that under the terms of the Purchase Order, APAC contracted away its rights under § 31–5–27, and therefore is entitled to no damages.

The parties seek diametrically opposed results. Plaintiff seeks a determination that, as a matter of law, the terms of the Purchase Order do not trump § 31–5–27, and that it is therefore entitled to § 1,173,013.47 in statutory damages. Defendant seeks a determination that the claim of APAC under § 31–5–27 must be dismissed because APAC has contractually waived its rights under the statute.

## II. Legal Standard

Rule 56 of the Federal Rules of Civil Procedure provides, in relevant part, that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The United States Supreme Court has held that this language "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also Moore v. Mississippi Valley State Univ.*, 871 F.2d 545, 549 (5th Cir.1989); *Washington v. Armstrong World Indus.*, 839 F.2d 1121, 1122 (5th Cir.1988).

The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record in the case which it believes demonstrate the absence of a genuine is-

sue of material fact. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. The movant need not, however, support the motion with materials that negate the opponent's claim. *Id.* As to issues on which the non-moving party has the burden of proof at trial, the moving party need only point to portions of the record that demonstrate an absence of evidence to support the non-moving party's claim. *Id.* at 323–24, 106 S.Ct. 2548. The non-moving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Id.* at 324, 106 S.Ct. 2548.

Summary judgment can be granted only if everything in the record demonstrates that no genuine issue of material fact exists. It is improper for the district court to "resolve factual disputes by weighing conflicting evidence, ... since it is the province of the jury to assess the probative value of the evidence." *Kennett–Murray Corp. v. Bone,* 622 F.2d 887, 892 (5th Cir. 1980). Summary judgment is also improper where the court merely believes it unlikely that the non-moving party will prevail at trial. *National Screen Serv. Corp. v. Poster Exchange, Inc.,* 305 F.2d 647, 651 (5th Cir.1962).

### III. Analysis

Section 31–5–27 provides that generally a contractor is to make payment to its subcontractors within fifteen days of receipt of payment from MDOT. Section 31–5–27 specifically states:

> When a contractor receives any payment under a public construction contract, the contractor *shall,* upon receipt of that payment, pay each subcontractor and material supplier in proportion to the percentage of work completed by each subcontractor and material supplier. If for any reason the contractor receives less than the full payment due under the public construction contract, the contractor shall be obligated to disburse on a pro rata basis those funds received, with

> the contractor, subcontractors and material suppliers each receiving a prorated portion based on the amount due on the payment. If the contractor without reasonable cause fails to make any payment to his subcontractors and material suppliers within fifteen (15) days after the receipt of payment under the public construction contract, the contractor shall pay to his subcontractors and material suppliers, in addition to the payment due them, a penalty in the amount of one-half of one percent ( 1/2 of 1%) per day of the delinquency, calculated from the expiration of the 15–day period until fully paid. The total penalty shall not exceed fifteen percent (15%) of the outstanding balance due.

*Id.* (emphasis added).

APAC alleges that Iafrate made its payments to APAC outside of this fifteen day limitation on approximately twenty occasions. *See* Plaintiff's Memorandum in Support of Motion for Partial Summary Judgment, pp. 3–4, filed December 10, 2004. As noted above, at this date APAC has paid the entire principal amount of $8,235,412.12. *See* Deposition of Dwayne Boyd, Division President of APAC, p. 8, attached as Exhibit "B" to Defendants' Memorandum in Support of Motion for Partial Summary Judgment, filed December 13, 2004 (answering "[n]o" when asked "[a]re there any amounts owed to APAC from Iafrate...not including interest or penalties? I'm just talking about just the principal balance on the purchase. Are there any amounts owed?"). However, because of the fifteen day time limitation for payments in § 31–5–27, APAC argues that Iafrate still owes $1,273,013.47 to APAC for late payments.

Defendants argue that APAC waived its right to the statutory interest rates of § 31–5–27 when Iafrate and APAC signed the Purchase Order. The specific provision of the Purchase Order upon which

Defendants rely states "TERMS: Net 30 Days from Invoice Date." *Id.*, attached as Exhibit "A" to Complaint, filed January 15, 2004. The parties do not dispute that these words mean that payment is due APAC within thirty days of when Iafrate receives an invoice form APAC. *See* Defendants' Reply Brief in Support of Motion for Partial Summary Judgment, pp. 2–3, filed January 18, 2005 (quoting portions of the deposition of Dwayne Boyd, in which he admits that the invoices from APAC to Iafrate provide for payment within thirty days of receipt of the invoice). Rather, the dispute between the parties centers on whether these words reflect the intent of APAC to waive its rights under § 31–5–27. On this issue, Plaintiff's argument is two-fold: (1) that parties are not empowered to override by contract the terms of § 31–5–27, so that if the terms used in the Purchase Order indicate that APAC did attempt to waive its rights, then those terms are null and void; and, (2) even if parties may waive their rights under the statute, the terms should not be read to indicate that APAC intended to waive its rights.

▰ Plaintiff is incorrect on both fronts. On the first, Plaintiff's argument is essentially that under Mississippi law all statutes are enactments of public policy, that the public policy of Mississippi cannot be waived by private contract, and that any provisions of private contracts that contravene public policy are unenforceable. Therefore, Plaintiff argues that a party's rights under § 31–5–27, as an embodiment of the public policy of Mississippi, cannot be waived by contract. That is not the case.

▰ In situations such as the present, parties have the power to contract away their statutory rights. As the Supreme Court of Mississippi has stated, "[t]he right to contract and have contracts enforced is a basic one guaranteed by the Constitutions. The function of the courts is to enforce contracts rather than enable parties to escape their obligation upon the pretext of public policy." *Smith v. Simon*, 224 So.2d 565, 566 (Miss.1969).

> The power to invalidate contracts or agreements on the ground that they violate public policy is far reaching and easily abused, and this court is committed to the doctrine that the public policy of the state must be found in its constitution and statutes, 'and when they have not directly spoken, then in the decisions of the courts and the constant practice of the government officials.'

*State v. Edward Hines Lumber Co.*, 150 Miss. 1, 115 So. 598, 605 (1928). Invalidating contracts on the ground that the contract at issue is void as against public policy is restricted to agreements "prohibited by the Constitution, a statute, or condemned by some decision of the courts construing the subject matter." *Cappaert v. Junker*, 413 So.2d 378, 380 (Miss.1982) (citing *State ex rel. Knox v. Edward Hines Lumber Co.*, 150 Miss. 1, 115 So. 598, 605 (1928)).

Plaintiff argues that the word "shall" in § 31–5–27 precludes the ability of a party to contract for terms different than those in the statute. The Court disagrees. Nothing in § 31–5–27 prohibits parties from entering into an agreement which provides for different terms than those in the statute. Rather, § 31–5–27 simply provides a baseline, default mechanism for how payments are to be made between private parties, contractors and subcontractors. Contractors and subcontractors, however, may alter that arrangement by contract.

▰ The second part of Plaintiff's argument is that even if § 31–5–27 permits a party to privately contract for different terms, Plaintiff did not do so. *See* Plaintiff's Memorandum in Opposition to Defendants' Motion for Partial Summary Judgment, p. 5, filed January 5, 2005. Plaintiff

argues that it did not waive its rights under § 31–5–27 on two grounds. First, Plaintiff states that it did not voluntarily and intentionally relinquish its rights under the statute. Second, Plaintiff states that it took steps to explicitly reserve Plaintiff's rights under the statute. On both grounds, Plaintiff is incorrect.

■ As proof that Plaintiff did not intend to waive its rights under the statute, Plaintiff cites the affidavit of Dwayne Boyd, in which he attests that by signing the Purchase Order, he did not intend to waive any rights under the statute. *See* Affidavit of Dwayne Boyd, attached as Exhibit "A" to Plaintiff's Response to Defendant's Motion for Partial Summary Judgment. That may be so. However, when determining what parties intended to do under a contract, courts do not look to post-dispute testimony or evidence to decipher what the parties intended, or perhaps more aptly stated meant to intend, the contract to say. Rather, under Mississippi law, courts look to the "four corners" of the contract to decipher the intent. *E.g., West v. West,* 891 So.2d 203, 211 (Miss. 2004). Only if intent cannot be deciphered from the four corners of the contract will a court consider parol evidence, such as that offered by Plaintiff in this case in the form of the affidavit of Dwayne Boyd. *See Id.*

Here, the Purchase Order states "TERMS: Net 30 Days from Invoice Date." *Id.,* attached as Exhibit "A" to Complaint. As noted earlier, the parties do not dispute that this means that payment would be due within thirty days of receipt of invoice. Plaintiff, however, does dispute that this language negates its rights under § 31–5–27. Plaintiff argues that clear affirmative words or actions are necessary for a party to waive its statutory rights, and that the words in the phrase above do not constitute clear affirmative words or actions. Plaintiff is correct that "[s]tatutory rights should ordinarily be

waived only by clear affirmative words or actions. . . ." 28 Am.Jur.2d Estoppel and Waiver § 214 (2004). However, it is difficult to see the terms used in the Purchase Order as anything other than words that clearly repudiate the terms under § 31–5–27.

There are two primary reasons for this reading of the terms. First, § 31–5–27 is straightforward in its requirements that under a business arrangement such as the present, within fifteen days of when MDOT paid Iafrate, Iafrate would have to pay APAC. The terms in the Purchase Order are straightforward, which provide for payment within thirty days of when APAC sends an invoice to Iafrate. While the language in the Purchase Order does not explicitly state that APAC renounces its rights under § 31–5–27, the language in the Purchase Order is effectively a renunciation of the terms of § 31–5–27. Second, Plaintiff is a sophisticated, developed business. Plaintiff has entered into numerous contracts such as the one in this case, and it is charged with having recognized that the terms of the Purchase Order were in conflict with those of § 31–5–27. Plaintiff cannot not claim ignorance and argue that it did not realize it waived its rights under the statute when it signed the Purchase Order.

Plaintiff's second argument as to why it did not intend to waive its rights under § 31–5–27 is that it took explicit steps to retain its rights under § 31–5–27. The explicit steps that it refers to are that an addendum to the Purchase Order, signed by the parties on the same day as the Purchase Order, states that "[t]his Purchase Order shall be governed by Mississippi law." Purchase Order, attached as Exhibit "A" to Complaint. But this general statement of law cannot override the specific statement of the parties with regard to the method of payment. The intent of the parties to have Iafrate pay

APAC within thirty days of receiving an invoice is clear. The general statement of law in the addendum to the Purchase Order does not change that.[1] Because of this, the Court in turn finds that APAC waived its rights under § 31-5-27. Therefore, the Defendants' Motion for Summary Judgment on Plaintiff's claim under § 31-5-27 is well taken and is granted. As a result of this finding, Plaintiff's Motion for Partial Summary Judgment is not well taken and is denied. Furthermore, this Opinion and Order renders moot Defendant's Motion to Strike Affidavit of John Terry May and Exhibits.

■ In the alternative, Defendants had reasonable cause not to make payment within fifteen days of MDOT's paying Iafrate, and § 31-5-27 specifically provides that the statutory interest rate only applies if a party did not have reasonable cause to not meet the payment deadline.[2] Because the parties in this case contracted for a situation in which Iafrate had thirty days to pay APAC from when Iafrate time it received an invoice from APAC, Iafrate had reasonable cause not to abide by the time restrictions of § 31-5-27.

1. Because the Court finds that the intent of the parties is clear and unambiguous, it need not apply the doctrine of *ejusdem generis*, which only applies when a contract is found to be ambiguous and doubtful and that, in such an instance, the specific provision controls over the general provision. *See Yazoo Properties v. Katz & Besthoff Number 284, Inc.,* 644 So.2d 429, 432 (Miss.1994).

2. If the contractor *without reasonable cause* fails to make any payment to his subcontractors and material suppliers within fifteen (15) days after the receipt of payment under the public construction contract, the contractor shall pay to his subcontractors and material suppliers, in addition to the payment due them, a penalty in the amount of one-half of one percent (1/2 of 1%) per day of the delinquency, calculated from the expiration of the 15–day period until fully paid. The total penalty shall not exceed fifteen percent (15%) of the outstanding balance due.

## IV. Conclusion

IT IS THEREFORE ORDERED that Defendants' Motion for Partial Summary Judgment [33-1] is well taken and is granted.

IT IS FURTHER ORDERED that Plaintiff's Motion for Partial Summary Judgment [31-1] is not well taken and is denied.

IT IS FURTHER ORDERED that Defendant's Motion to Strike Affidavit of John Terry May and Exhibits [43-1] is denied as moot.

### *OPINION AND ORDER Denying Reconsideration*

Before the Court is the Motion of Plaintiff APAC–Mississippi, Inc. ("APAC" or "Plaintiff") to Reconsider the Opinion and Order of the Court ("Opinion"), docket entry no. 55, which granted Defendants' Motion for Partial Summary Judgment. The Opinion specifically held that APAC contractually waived its rights under the Prompt Pay Act, Miss.Code Ann. § 31-5-27.[1] The Court also held that in the alter-

*Id.*

1. Section 31-5-27 specifically states:

When a contractor receives any payment under a public construction contract, the contractor shall, upon receipt of that payment, pay each subcontractor and material supplier in proportion to the percentage of work completed by each subcontractor and material supplier. If for any reason the contractor receives less than the full payment due under the public construction contract, the contractor shall be obligated to disburse on a pro rata basis those funds received, with the contractor, subcontractors and material suppliers each receiving a prorated portion based on the amount due on the payment. If the contractor without reasonable cause fails to make any payment to his subcontractors and material suppliers within fifteen (15) days after the receipt of payment under the public construction con-

native, Defendants had reasonable cause not to make payments to Plaintiff within the time period provided for in the Prompt Pay Act. Therefore, under either holding, Plaintiff was not entitled to statutory damages as provided for under the Prompt Pay Act. The Court references the reader to the Opinion and Order of the Court, filed March 2, 2005, for a full explanation of the conclusions reached by the Court. Having considered the Motion, Response, attachments to each and supporting and opposing authority, the Court finds that the Motion to Reconsider is not well taken and that it should be denied.

## I. Background and Procedural History

The Mississippi Department of Transportation ("MDOT") awarded Defendant James Construction Group, L.L.C., formerly known as Angelo Iafrate Construction, L.L.C. ("Iafrate"), a contract to construct the Nissan—I–55 interchange in Madison County, Mississippi ("the Project"). As required under Mississippi law, Iafrate obtained a performance and payment bond from co-Defendant National Fire Insurance Company ("National"), and National thereby served as surety to Iafrate. On June 19, 2001, Iafrate entered into a contract ("the Purchase Order" or "the contract") with Plaintiff APAC–Mississippi, Inc. (referred to as "APAC" or "Plaintiff"), whereby APAC agreed to supply construction project materials to Iafrate. The dispute in this case centers

around payments that Iafrate sent to APAC for those materials.

Section 31–5–27 provides that generally a contractor is to make payment to its subcontractors within fifteen days of receipt of payment from the Mississippi Department of Transportation ("MDOT"). APAC alleges that Iafrate made its payments to APAC outside of this fifteen day limitation on approximately twenty occasions. *See* Plaintiff's Memorandum in Support of Motion for Partial Summary Judgment, pp. 3–4, filed December 10, 2004. APAC argues that under § 31–5–27, it is entitled to $1,173,013.47 in statutory damages.

Defendants argue that APAC waived its right to the statutory interest rates of § 31–5–27 when Iafrate and APAC signed the Purchase Order. The specific provision of the Purchase Order upon which Defendants rely states "TERMS: Net 30 Days from Invoice Date." *Id.*, attached as Exhibit "A" to Complaint, filed January 15, 2004. The parties do not dispute that these words mean that payment is due APAC within thirty days of the date on the invoice.[2] Rather, the dispute between the parties centers on whether these words reflect the desire of APAC to waive its rights under § 31–5–27. On this issue, Plaintiff's argument is two-fold: (1) that parties are not empowered to override by contract the terms of § 31–5–27, so that if the terms used in the Purchase Order indicate that APAC did attempt to waive

tract, the contractor shall pay to his subcontractors and material suppliers, in addition to the payment due them, a penalty in the amount of one-half of one percent ( 1/2 of 1%) per day of the delinquency, calculated from the expiration of the 15–day period until fully paid. The total penalty shall not exceed fifteen percent (15%) of the outstanding balance due.

2. Plaintiffs argue that this Court incorrectly stated that under the contract, payment would be due within thirty days of receipt of

an invoice. Plaintiffs maintain that an accurate description of the terms of the contract would be that payment was due within thirty days of the date on the invoice, and not within thirty days of receipt of invoice. That does appear to be the most fair reading of the terms of the contract. Defendants explicitly state that they do not object to this argument. Opposition to Motion of APAC–Mississippi, Inc. for Reconsideration, p. 2 n. 2, filed April 1, 2005. Therefore, the argument is well taken, and the Court finds that payment was due within thirty days of the date on the invoice.

its rights, then those terms are null and void; and, (2) even if parties may waive their rights under the statute, the terms should not be read to indicate that APAC intended to waive its rights.

The Court previously held that (1) contracting parties were empowered to waive their rights under the Prompt Pay Act and that (2) Plaintiff had waived these rights. Plaintiff filed this Motion to Reconsider and argues that the ruling of the Court could substantially affect the construction industry.

## II. Legal Standard

Motions to reconsider are analyzed under Rule 59(e) of the Federal Rules of Civil Procedure. The United States Court of Appeals for the Fifth Circuit has held that under a Rule 59(e) motion to reconsider, a district court should consider the following non-exclusive list of factors: (1) the reasons set forth by the movant justifying consideration of evidence or arguments that the movant failed to present in the underlying motion, (2) the importance of evidence or arguments, (3) whether the reasons set for by the movant justifying reconsideration were available to the movant before they responded to the underlying motion, and (4) the likelihood that the non-movants will suffer unfair prejudice if the motion is reconsidered. *Sturges v. Moore*, 73 Fed.Appx. 777, 778 (5th Cir. 2003) (citing *Ford v. Elsbury*, 32 F.3d 931, 937–38 (5th Cir.1994)). Litigants considering a Rule 59(e) motion have been "strongly cautioned" to carefully consider the grounds for such a motion. *Atkins v. Marathon LeTourneau Co.*, 130 F.R.D. 625, 626 n. 1. (S.D.Miss.1990). "Whatever may be the purpose of Rule 59(e), it should not be supposed that it is intended to give an unhappy litigant one additional chance to sway the judge." *Id.*

## III. Analysis

Under the standard above, Plaintiffs argue that the importance of the rulings in the previous Opinion of the Court justifies a reconsideration of them. Plaintiffs argue that the logical implication of the Opinion is that now parties to a construction contract will have to affirmatively and explicitly state that the terms of the Prompt Pay Act will govern the payment schedule between the parties. Plaintiffs argue that the Court should revise the previous Opinion because of the potential effect of this implication. It is the opinion of the Court that the language used in the previous Opinion should not be construed to have such a far reaching effect.[3]

The Court does not believe the previous Opinion should have such a far reaching effect because the Court solely ruled that because the parties to this case had explicitly used language in a contract that provided for a different time schedule for payments than is provided for under the Prompt Pay Act, that the parties had contractually waived the time schedule for payments under the Prompt Pay Act, and had contractually waived any rights to statutory damages that occur as a result of violating the time schedule under the Act. Absent such explicit language that conflicts with the terms of the Prompt Pay Act, the Prompt Pay Act is presumed to govern the relationship between contractors and subcontractors. Parties do not have to explicitly provide that the Prompt Pay Act applies to them; it is presumed that the Act does. All that the previous Opinion of the Court says is that a party may waive its rights under the Prompt Pay Act by using contractual language that conflicts with that of the Prompt Pay Act. Stated another way, a party cannot

---

**3.** To the extent that the previous Opinion does require a party to explicitly reserve its rights under the Prompt Pay Act, most of the affected parties are sophisticated businesses which are perfectly capable of protecting their rights through contract.

have it both ways. To allow Plaintiff to impose upon Defendant the timetable for payment that was provided for in the contract between them, and then to allow Plaintiff to also impose the timetable for payments that is provided for in the Prompt Pay Act, would be to do exactly that and allow Plaintiff to have it both ways.

APAC argues that the thirty day timetable of the Purchase Order and the fifteen day timetable of the Prompt Pay Act are not mutually exclusive, and that a party can have both. It is difficult to see how. APAC is correct that there will be instances in which Iafrate could have violated both the fifteen day timetable of the Prompt Pay Act and the thirty day timetable of the Purchase Order. But that will not always be the case. The Court will not read the parties to have so contracted simply so that in those individual situations in which both timetables happened to have been violated, APAC can recover statutory damages. To read the contract in such a fashion would result in unnecessary confusion between the parties as to exactly what terms govern their relationship, i.e., the fifteen day or the thirty day timetable? It would not be consistent with the language in the contract between the parties, which provides for payment within thirty days of invoice date, to find that despite this language, the parties also agreed to the fifteen day time table provided in the Prompt Pay Act.

Moreover, when APAC contracted away the fifteen day timetable of the Prompt Pay Act as the governing timetable between itself and Iafrate, it also contracted away the ability to receive statutory damages. The damages of the Prompt Pay Act are calculated to be imposed on the basis of a fifteen day timetable. Here, the parties contracted to conduct business on a thirty day timetable. Nothing in the contract between the parties suggests that the parties intended to apply the statutory damages applicable to the fifteen day timetable in the Prompt Pay Act to the thirty day timetable in the Purchase Order. To assume that the parties intended this is to assume too much.

Unlike statutes in other states that are similar to the Prompt Pay Act, the Prompt Pay Act does not explicitly provide for damages pursuant to a timetable other than the fifteen day timetable. For instance, in Alabama, Utah, and Vermont, the statutes provide alternative timetables may govern when statutory damages begin to accrue.[4] Furthermore, § 31–5–25, the

---

4. A party who receives a payment from the state in connection with a contract shall pay each of its subcontractors or sub-subcontractors the portion of the state's payment to the extent of that subcontractor's or sub-subcontractor's interest in the state's payment **in accordance with the payment terms agreed to by the contractor and the subcontractor,** but if payment terms are not agreed to, then within seven days after receipt of payment from the state.

Ala.Code § 41–16–3 (2001)(emphasis added). Upon payment by an agency of the State of Utah or by an agency of the United States, a business which has acquired under contract, property or services in connection with its contract with such an agency from a subcontractor or supplier, shall pay such subcontractor or supplier within 30 days after payment from such agency. Interest at the rate of 15.5% per annum shall accrue and is due any subcontractor or supplier who is not paid within 45 days after the business receives payment from the agency, **unless otherwise provided by contract between the business and the subcontractor or supplier.** Interest begins to accrue on the 31st day at the rate specified in this subsection.

U.C.A.1953 § 15–6–5.
Notwithstanding any contrary agreement, when a subcontractor has performed in accordance with the provisions of its contract, a contractor shall pay to the subcontractor, and each subcontractor shall in turn pay to its subcontractors, the full or proportional amount received for each such subcontrac-

Prompt Pay Act applicable to prime contractors on public projects, does explicitly provide that recovery can run from a day provided for in a contract. APAC concludes that because § 31–5–25 so provides, then because § 31–5–27 "is silent as to the effect of contract terms, it must be concluded that the Mississippi Legislature did not intend for those contract payment terms to nullify the Prompt Pay Act remedy." Reply in Support of the Motion of APAC for Reconsideration, pp. 1–2, n. 1, filed April 8, 2005. The Court disagrees with this inference. It seems to the Court that the failure of the Mississippi Legislature to explicitly provide that contract terms can give rise to the statutory remedy in § 31–5–27 indicates that it did not intend for a party, on facts such as these, to be able to opt for a different timetable, yet still seek relief for statutory damages. If the Legislature intended for parties to be able to contract for a different timetable, yet still have the Prompt Pay Act apply, then it knew how to so provide. Regardless of what APAC may think of this result, that is the result for which the Legislature has provided. The Court cannot simply rewrite the Prompt Pay Act for the purpose of seeking a more coherent or preferable statutory scheme. For the reasons above, by contracting for a thirty day timetable, the parties waived their rights under the Prompt Pay Act, both in terms of the timetable, and in terms of the corresponding damages.

Some states explicitly permit parties to waive their rights under statutes similar to the Prompt Pay Act. Others explicitly preclude such a waiver. Nothing in the Prompt Pay Act suggests that parties may not waive or modify its terms, and generally a party may contractually waive its statutory rights. *See* 28 Am.Jur.2d Estoppel and Waiver § 214 at n. 98 (stating that "[a]bsent an affirmative indication in a statute of Congress' intent to preclude waiver, a court presumes that statutory provisions are subject to waiver by voluntary agreement of the parties"). Defendants note that

> [u]pon information and belief, legislation has been drafted, but not yet adopted, to specifically state that Mississippi's Prompt Pay Act cannot be waived by contract. However, to date, that legislation has not taken effect. Until then, this Court has correctly ruled that APAC has waived application of the Prompt Pay Act.

*Id.* at p. 4 n. 3. Such legislation, if adopted, would undoubtably affect the resolution of the issue before the Court. However, until such a time as such legislation is adopted, the Court is not persuaded that it should alter its previous conclusions.

As the Court stated in the original Opinion, "Plaintiff is correct that '[s]tatutory rights should ordinarily be waived only by clear affirmative words or actions....' " 28 Am.Jur.2d Estoppel and Waiver § 214 (2004). However, it is difficult to see the terms used in the Purchase Order as anything other than words that clearly repudiate the terms under § 31–5–27." Opinion, p. 9. Therefore, the Motion to Reconsider is not well taken and is denied.

Plaintiffs alternatively requested that should this Court deny the Motion to Reconsider, that the Court certify the findings in the objected to Opinion for interlocutory appeal. Plaintiff invokes the provisions of Rule 54(b) of the Federal Rules of Civil Procedure. Under Rule 54(b), "[a] district court should grant cer-

---

tor's work and materials based on work completed or service provided under the subcontract, seven days after receipt of each progress or final payment or **seven**

**days after receipt of the subcontractor's invoice,** whichever is later.
Vt. Stat. Ann. Tit. 9, § 4001, *et seq.* (2001) (emphasis added).

 

tification only when there exists some danger of hardship or injustice through delay which would be alleviated by immediate appeal...." *PYCA Indus., Inc. v. Harrison County Waste Water Management Dist.*, 81 F.3d 1412, 1421 (5th Cir. 1996) (citation omitted). In the subject case, the Court finds that there is no danger of hardship or injustice through delay which would be alleviated by immediate appeal. Both Plaintiff and Defendant have submitted to a bench trial of this action. Docket entry no. 62, filed April 1, 2005. Furthermore, the trial of this matter can be expedited. The issues before the Court will be limited, and because the matter can be expedited, there is no risk of undue delay. Therefore, the Court finds that an interlocutory appeal should not issue, as it will be most efficient to reach a final resolution in this matter before permitting Plaintiff to appeal.

The Court notes that at this point in time APAC retains two causes of action against Iafrate: breach of the purchase order and breach of the payment bond. While the Court finds that APAC cannot recover statutory damages under the Prompt Pay Act based upon a fifteen day timetable, under the claim of APAC for breach of the purchase order, APAC still has a claim against Iafrate for breach of the thirty day timetable, and to be awarded damages in an amount to be determined.

### IV. Conclusion

IT IS THEREFORE ORDERED that the Motion of Plaintiffs to Reconsider [57–1] is not well taken and is hereby denied.

IT IS FURTHER ORDERED that the request to certify the issues before the Court for interlocutory appeal [57–2] is not well taken and is hereby denied.

IT IS FURTHER ORDERED that a result of this Opinion and Order, and in an effort to manage the docket sheet of this case, the outstanding Motion of APAC *in Limine* [53–1] hereby is denied as moot at this time. APAC may reintroduce this Motion when appropriate.